1  Alan J. Bernstein
   Law Offices of Alan J. Bernstein, Ltd.,
2  10 S. LaSalle St., Ste. 1420,
   Chicago, IL 60603
3  Telephone: 312-726-2755

4  Troy A. Brenes, SBN 249776
   (*Admitted Pro Hac Vice*)
5  BRENES LAW GROUP, P.C.
   100 Spectrum Center Drive, Suite 330
6  Irvine, CA 92618
   tbrenes@breneslawgroup.com
7  Telephone: (949) 397-9360
   Facsimile: (949) 607-4192
8  Attorney for Plaintiff

9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF ILLINOIS**
11

12  CAMERON PAYNTER,                 )  Case No.: 1:22-cv-05160
                                     )
13                 Plaintiff,        )
                                     )
14  vs.                              )  **FIRST AMENDED COMPLAINT FOR**
                                     )  **DAMAGES AND**
15                                   )  **DEMAND FOR JURY TRIAL**
    BG MEDICAL, LLC; ASPIDE MEDICAL; )
16  CHAMBERLAIN TECHNOLOGIES LLC;    )  **(1)**  Negligence
    MEDICAL MURRAY, INC. and DOES 2  )  **(2)**  Product Liability
17  through 100, inclusive,          )  **(3)**  Gross Negligence
                                     )  **(4)**  Unjust Enrichment
18                 Defendants.       )
                                     )
19

20       Plaintiff CAMERON PAYNTER ("Plaintiff"), by and through his undersigned counsel,

21  brings this Complaint at Law against Defendants BG MEDICAL, LLC, ASPIDE MEDICAL,

22  CHAMBERLAIN TECHNOLOGIES LLC and MEDICAL MURRAY, INC. and in support thereof

23  states the following:

24       1.      This is a device tort action brought on behalf of the above-named Plaintiff arising out

25  of the failure of Defendants' Surgimesh XB surgical mesh device ("Surgimesh" or "product"). As a

26  result, Plaintiff suffered permanent injuries and significant pain and suffering, emotional distress,

27

28                                       - 1 -

lost wages, and diminished quality of life. The Plaintiff respectfully seeks all damages to which he may be legally entitled.

## I. PARTIES & JURISDICTION

2. The Court has jurisdiction over this case pursuant to 28 U.S.C. §1332. Plaintiff's claims for recovery exceed $75,000 in value exclusive of interest and costs, and complete diversity of citizenship exists between Plaintiff and all Defendants.

3. Plaintiff Cameron Paynter ("Plaintiff") is, and was, at all relevant times, a citizen and resident of the State of Indiana and the United States.

4. Defendant BG MEDICAL, LLC (hereinafter "BG MEDICAL), is now, and at all times relevant to this action was, a limited liability company organized under the laws of Illinois and has its principal place of business and headquarters in the state of Illinois located at 21805 W. Field Parkway STE 160, Deer Park, County of Lake. No owners of BG MEDICAL are citizens or reside in the State of Indiana. According to the declaration of BG Medical's president John Huelskamp filed in another matter before this Court, the members of BG Medical are John Huelskamp and Patricia Huelskamp. *Decl. of John Huelskamp, Case No. 1:18-cv-04178, Dkt. No*. 1, ¶ 3, a true and correct copy of which is attached as **Exhibit A**. All members of BG Medical are citizens of Illinois. *Id*. at ¶ 4. Accordingly, BG Medical is a citizen of Illinois. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members"). BG Medical's agent for service of process is Andrew J. Kelleher, Jr. and is located at 102 S. Wynstone Park Drive, North Barrington, Illinois 60010.

5. BG MEDICAL is a distributor for Defendant, ASPIDE MEDICAL d/b/a SURGIMESH (hereinafter "ASPIDE"). Dating back to at least 2009 and continuing until John Huelskamp and Patricia Huelskamp purchased the design and took over the rights and liabilities of for the Surgimesh hernia mesh device product lines from Aspide through CHAMBERLAIN TECHNOLOGIES, LLC. At which point John Huelskamp and Patricia Huelskamp continued

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1   distributing and marketing the Surgimesh product lines through BG Medical, but now also became

2   substantially involved in manufacturing the devices and responsible for all post-market surveillance

3   and quality compliance for the devices via their sole ownership of CHAMBERLAIN

4   TECHNOLOGIES, LLC. BG Medical has been substantially involved in marketing, distribution,

5   and post-market surveillance of the SurgimeshXB hernia mesh device. BG Medical independently

6   created and maintains numerous methods to market and promote the SurgimeshXB, including

7   multiple websites, brochures, labeling materials, testimonial pages, marketing campaigns, sales

8   representatives, promotional activities and interactions with physician societies, and other

9   promotional tactics. BG Medical markets itself as a "World specialist in surgical textile implants."

10  BG Medical has also been involved in the recruitment and payment to physicians to study and

11  promote the use of SurgimeshXB. Upon information and belief, BG Medical may also have been

12  involved in the design of the SurgimeshXB.

13      6.      Aspide designed and manufactured one of the SurgimeshXB implanted in Plaintiff.

14  Aspide is a foreign (French) entity most closely resembling a corporation, and its headquarters and

15  principal place of business is located at 246 Allee Lavoisier, 42350 La Talaudiere, France.

16      7.      BG Medical has advised Plaintiff's counsel that Aspide is defunct and is no longer

17  functioning as a company. In another case filed by Plaintiff's counsel regarding the same mesh

18  products, Aspide failed to respond to the Complaint and has taken no action to defend itself.

19      8.      MEDICAL MURRAY INC. (hereinafter "MURRAY"), now is, and at all times

20  relevant to this action was, incorporated under the laws of Illinois and has its principal place of

21  business and headquarters in the state of Illinois located at 400 N. Rand Road, North Barrington,

22  County of Lake. MURRAY is the primary manufacturer of SurgimeshXB and manufactured one of

23  the SurgimeshXB products implanted in Plaintiff. MURRAY manufactures the SurgimeshXB to fill

24  orders placed by BG MEDICAL and CHAMBERLAIN who then distribute the product. No owners

25  of Murray are citizens or reside in Indiana. Medical Murray's President, Chairman, and Founder is

26  Phillip M. Leopold and is located at 11323 Winston Willow Court, Windermere, Florida 34786.

27

28

- 3 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  Medical Murray's Secretary, CEO, and Founder is Andrew R. Leopold and is located at 23178

2  Lochanora Drive, Lake Zurich, Illinois 60047. Medical Murray's agent for service is Brendan

3  Healey and is located at 150 S. Wacker Drive Ste. 2400, Chicago, Illinois 60606.

4       9.      BG Medical represents that CHAMBERLAIN TECHNOLOGIES, LLC (previously

5  Doe 1 and hereinafter "CHAMBERLAIN") is the current owner of the SurgimeshXB clearance and

6  trademark. BG Medical represents that CHAMBERLAIN'S only members are John Huelskamp and

7  Pat Woodward Huelskamp – the same two individuals that are BG Medical's only two members.

8  BG Medical represents that CHAMBERLAIN does not have any other employees or independent

9  contractors except for Medicept, CHAMBERLAIN's regulatory and quality contractor.

10 CHAMBERLAIN was formed on March 4, 2019, under Delaware law. In March 2019,

11 CHAMBERLAIN purchased the clearance and mark for the Surgimesh XB from Aspide. Other

12 than Surgimesh, CHAMBERLAIN has not registered any other products with the FDA. Both

13 members of CHAMBERLAIN, John Huelskamp and Pat Woodward Huelskamp, are citizens of

14 Illinois. Accordingly, CHAMBERLAIN is a citizen of Illinois. *See Cosgrove v. Bartolotta*, 150 F.3d

15 729, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of the diversity jurisdiction is the

16 citizenship of its members").

17      10.     Since its formation, CHAMBERLAIN has been substantially involved in the

18 marketing, manufacturing, distribution, and post-market surveillance of the SurgimeshXB hernia

19 mesh device. It contracts with Medical Murray to manufacture some portion of the device, but upon

20 information and belief remains primarily responsible for setting design and manufacturing

21 parameters for the Surgimesh XB, risk management, document management and control, complaint

22 handling, reporting Surgimesh XB adverse events to the FDA, and sales and marketing of the

23 device.

24      11.     Does 2 through 100 are currently unknown but may have liability due to involvement

25 in the design, manufacture, promotion, labeling, post-market surveillance, or distribution of the

26 SurgimeshXB implanted in Plaintiff, and/or are liable to Plaintiff due to fraudulent transfer of assets

27

28
                                    - 4 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  involving Aspide. If and when the identity and involvement of Does 2 through 100 is discovered,

2  Plaintiff will amend the Complaint to indicate their identity, involvement, and basis for liability.

3      12.     Hereinafter, BG MEDICAL, ASPIDE, MURRAY, and CHAMBERLAIN shall

4  collectively be referred to as "Defendants."

5      13.     Defendants have conducted business and derived substantial revenue from within the

6  State of Illinois and have sufficient minimum contacts with and intentionally availed themselves of

7  the Illinois market so as to render the exercise of jurisdiction over Defendants by the Illinois courts

8  consistent with traditional notions of fair play and substantial justice.

9      14.     ASPIDE through its exclusive distributorship with BG MEDICAL with respect to

10 the product at issue in the case at bar, has made or performed contracts or promises substantially

11 connected to the State of Illinois.

12     15.     This court may exercise jurisdiction over Defendants under the laws of Illinois, the

13 Illinois Constitution, and the Constitution of the United States.

14     16.     Venue is proper in this Court as a substantial part of the counts giving rise to this

15 Complaint occurred in Lake and Cook counties of Illinois.[1] This includes the marketing, promotion,

16 labeling, and post-market surveillance by BG Medical regarding the SurgimeshXB. Additionally,

17 contracts were negotiated and entered into between BG Medical, Aspide, and Murray in this state.

18 Upon information and belief, Plaintiff further alleges that Aspide and Murray commonly shipped or

19 manufactured SurgimeshXB to or in Illinois to then be distributed by BG Medical to other states,

20 including the SurgimeshXB implanted in Plaintiff.

21     17.     This Court has jurisdiction over Defendants because the tort(s) here occurred in the

22 State of Illinois.

23

24

25

26
_____

27 [1] BG Medical has submitted sworn testimony in another case that it moved its headquarters from
   Cook County to Lake County in 2018

28                                              - 5 -

**ALTER EGO**

18.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between BG MEDICAL and CHAMBERLAIN such that any individuality and separateness between them ceased. These Defendants are the alter ego of one another and exerted control over one another.

19.     The owners of both BG MEDICAL and CHAMBERLAIN are the same two individuals - John Huelskamp and Pat Woodward Huelskamp. CHAMBERLAIN was created for the purpose of purchasing the Surgimesh FDA clearance and trademark from Aspide when the company became defunct. Both BG MEDICAL and CHAMBERLAIN perform the same duties and have the same responsibilities as one another with respect to the SurgimeshXB product. The owners of CHAMBERLAIN created the limited liability company and used it to purchase the SurgimeshXB clearance and trademark (rather than making the purchase as BG MEDICAL) in an effort to avoid incurring liability for injuries caused by the product. Adherence to the fiction of the separate existence of BG MEDICAL and CHAMBERLAIN as separate entities distinct from each other would sanction a fraud and/or promote injustice.

20.     At all times herein mentioned, BG MEDICAL and CHAMBERLAIN were the agents, servants, partners, co-conspirators and/or joint venturers of each of the other and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

21.     At all times herein mentioned, the members of BG MEDICAL and CHAMBERLAIN participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of the SurgimeshXB, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

## II.   <u>STATEMENT OF FACTS</u>

19.    At all relevant times, each of the Defendants designed, developed, manufactured, licensed, marketed, distributed, sold and/or placed Surgimesh in the stream of commerce, deriving substantial revenue therefrom.

20.    All acts and omissions of each Defendant as described herein were done by its agents, servants, employees, representatives, and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

21.    At all relevant times, each of the Defendants, was and still is a corporation authorized to do business in the State of Illinois.

22.    At all times hereinafter mentioned, upon information and belief, Defendants were and still are business entities actually doing business in the State of Illinois.

23.    At all times hereinafter mentioned, Defendants were engaged in the business of designing, manufacturing, advertising, marketing, and selling surgical mesh products including the Surgimesh XB product, and in pursuit of this business, transacted business within the State of Illinois and contracted to provide goods and services in the State of Illinois.

24.    At all times hereinafter mentioned, upon information and belief, Defendant committed tortious acts inside the State of Illinois, which caused injury to Plaintiff.

25.    At all times hereinafter mentioned, upon information and belief, Defendants expected or should reasonably expect its acts to have consequences in the State of Illinois.

26.    On or about December 12, 2019, Plaintiff was implanted with a Surgimesh XB product (REF#: TINTRACK10, LOT#: F14316A) to repair an incisional hernia.

27.    The Surgimesh XB product implanted in Plaintiff was designed, manufactured, distributed, and/or sold by Defendants, and was intended to be used by surgeons for hernia repair surgeries.

28.    Defendants represented the product to be appropriate and suitable for such purposes.

- 7 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

29.     Subsequently, as a direct result of the implanted Surgimesh XB product, Plaintiff experienced, among other ailments, scarring of the mesh, a widened keloid, and recurrent ventral hernia defect.

30.     The previously placed Surgimesh XB product was not removed. Instead, on or about September 29, 2020, a Surgimesh XB product (REF#: TINTRACK-7, LOT#: Z2458905C) was folded and placed into the ventral hernia defect in the epigastric location of the previously placed Surgimesh XB product.

31.     Subsequently, as a direct result of the implanted Surgimesh XB product, Plaintiff experienced, among other ailments, recurrent epigastric incisional hernia defect containing two contracted pieces of Surgimesh XB and recurrent small umbilical Swiss cheese preperitoneal defects.

32.     Additionally, Plaintiff also experienced seroma in the epigastrium with recurrent epigastric defect and omentum adherent to the Surgimesh XB product that was deformed in the shape of a cone with the bare polypropylene surface exposed and the silicone surface within the fascial defect.

33.     On or about September 8, 2021, Plaintiff was implanted with a Surgimesh XB product (REF#: Trinta C-15, LOT#: Z2459005B). Thereafter, both previously placed Surgimesh XB products were explanted in its entirety.

34.     The previously placed Surgimesh XB products were found to have adhered to Plaintiff's soft tissue.

### III. DEFENDANTS' SURGICAL MESH PRODUCT - SURGIMESH

30.     Defendants obtained "clearance" to market the Surgimesh XB product under Section 510(k) of the Medical Device Amendments to the Food, Drug, and Cosmetic Act.

31.     Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the device. The FDA explained the difference between the 510(k) process and the more

- 8 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

rigorous "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, which the court quoted from:

> A manufacturer can obtain an FDA findings of 'substantial equivalence' by submitting a premarket notification to the agency in accordance with section 510(k) of the [Food Drug and Cosmetic Act.] 21 U.S.C. § 360(k). A device found to be 'substantially equivalent' to a predicate device is said to be 'cleared' by the FDA (as opposed to "approved" by the agency under a PMA.

376. F.3d 163, 167 (3d. Cir. 2004). A pre-market notification submitted under 510(k) is thus entirely different from a PMA, which must include data sufficient to demonstrate that the product involved is safe and effective.

32.     In *Medtronic, Inc.* v. Lohr, the U.S. Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis.... The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in average of 20 hours .... As on commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification required little information, rarely elicits a negative response form the FDA, and gets processed quickly.

518S. 470, 478-79 (1996).

33.     Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse associated with the drug...and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling ...." This obligation extends to post-market monitoring of adverse events/complaints.

34.     Surgimesh X B is a non-absorbable synthetic mesh, made of non-knitted, non-woven fibers of polypropylene, one surface of which is coated with silicone.

35.     Defendants represent that the Surgimesh provides reinforcement of soft tissues while the silicone layer on the opposite side minimized tissue attachment to the mesh.

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

36. Defendants did not timely or adequately apprise the public and/or physicians about the risks of using the Surgimesh implanted in Plaintiff.

37. The polypropylene mesh used in the Surgimesh implanted in Plaintiff was marketed by Defendants as superior to other implantable materials.

38. The available scientific evidence shows that the polypropylene material is biologically incompatible with human tissue and actually promotes deleterious immune responses in a large subset of the population.

39. These negative responses promote inflammation of the surrounding tissue and contribute to the development of severe adverse reactions to the mesh.

40. The polypropylene of which the Surgimesh is partially comprised is not stabilized with the types or amounts of anti-oxidants to permit it to resist material degradation *in vivo* [within the body].

41. Due to Defendants' design and manufacturing processes, the Surgimesh's polypropylene mesh component significantly degrades and weakens within the body, resulting in a variety of material failures.

42. The degradation of the polypropylene causes microscopic fissures to form on the surfaces of the polypropylene filaments, creating a nidus for infection and biofilm.

43. Surface degradation also causes flaking of the polypropylene, which increases the surface area of host tissue exposed to the biomaterial and, in turn, increasing the host Foreign Body Response ("FBR") and accelerating the material degradation.

44. The polypropylene component is also prone to shrinking and contracting after being implanted in the human body, which results in multiple severe complications including but not limited to pain, hernia recurrence, organ perforation, device migration, and meshoma.

45. The silicone layer exacerbates the development of biofilms by creating an additional impediment to the human body's defenses to infection.

46. It is well-known in biomaterials research that permanently implanted products

- 10 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  incorporating silicone-coated polypropylene increase the risk for erosion and wound dehiscence.

2  47.  The Surgimesh mesh presents and constitutes an unreasonable risk of danger

3  and injury in the following respects:

4  a. the mesh product was not properly manufactured;

5  b. the mesh product was defectively designed;

6  c. the mesh product did not perform as safely as an ordinary consumer/patient would

7  expect;

8  d. the mesh product was inadequate or insufficient to maintain its integrity during normal

9  use after implantation in the consumer/patient; and

10  e. such further and additional defects as discovery and the evidence reveal.

11  48.  As a result of Defendants' actions and inactions, Plaintiff was injured due to the

12  Surgimesh product, which caused Plaintiff various injuries and damages. Plaintiff accordingly seeks

13  damages associated with these injuries.

14  49.  At all times herein mentioned, Defendants knew, or in the exercise of reasonable care

15  should have known, that the Surgimesh mesh was not properly manufactured, tested, inspected,

16  packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with

17  proper warnings, was not suitable for the purpose it was intended and was unreasonably likely to

18  injure the products' users.

19  50.  Defendants ignored reports from patients and health care providers throughout the

20  United States of the Surgimesh mesh's failure to perform as intended, which led to the severe and

21  debilitating injuries suffered by Plaintiff and numerous other patients. Rather than doing adequate

22  testing to determine the cause of these injuries or rule out the Surgimesh product's design as the

23  cause of the injuries, Defendants continued to market Surgimesh mesh as a safer and more effective

24  medical device as compared to other available alternative treatment for hernias.

25  51.  Defendants did not timely or adequately apprise the public and physicians of the

26  defects in Surgimesh product, despite Defendants' knowledge that it had failed due to the described

27

28
- 11 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

defects.

52.     Before Plaintiff's implantation of Surgimesh, Defendants' sales representatives, agents, and employees knew of complications and/or other adverse events, including but not limited to:

a.  Significantly increased rate, amount, and tenacity of adhesions;

b.  Adherence of bacteria to the polypropylene material and silicone;

c.  Significantly elevated risk of infection;

d.  Extreme difficulty in removal;

e.  Grave bodily injury associated with removal;

f.  Significant mesh contracture;

g.  Mesh rupture;

h.  Severe inflammatory response;

i.  Significantly increased rate of Fistula;

j.  Significantly increased rate of Seroma;

k.  Migration;

l.  Organ perforation;

m.  Sexual dysfunction;

n.  Nerve injury;

o.  Bowel obstruction;

p.  Biofilms,

q.  Erosion;

r.  Wound dehiscence

53.     In addition, Defendants knew or should have known of histopathological and other adverse reactions with the silicone coating used on its Surgimesh product.

54.     Defendants' Surgimesh product was at all times utilized and implanted in a manner foreseeable to Defendants, as Defendants generated the instructions for use and created procedures

- 12 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  for implanting the mesh.

2      55.    Plaintiff and Plaintiff's physicians foreseeably used and implanted the Defendants'

3  Surgimesh product, and did not misuse, or alter the Surgimesh mesh in an unforeseeable manner.

4      56.    Feasible and suitable alternative procedures and instruments, as well as suitable

5  alternative designs for implantation and treatment of hernias and soft tissue repair have existed at all

6  times relevant as compared to the Defendants' Surgimesh product.

7      57.    Contrary to Defendants' representations, the Surgimesh product has a high rate of

8  failure, injury, and complications associated with its intended use; the product fails to perform as

9  intended resulting in debilitating subsequent revision surgeries for users of the medical device,

10 including Plaintiff.

11     58.    Despite their knowledge of this dangerous side effect that can result from Surgimesh

12 use, Defendants refused to warn patients, physicians and the medical community about the risks.

13     59.    Plaintiff and Plaintiff's physicians foreseeably used and implanted the Defendants'

14 Surgimesh mesh, and did not misuse, or alter the Surgimesh mesh in an unforeseeable manner.

15     60.    Consumers who have been implanted with Surgimesh, including Plaintiff, have

16 several alternative safer products and biomaterials available for implantation and treatment of

17 hernias, which have existed at all times relevant as compared to Defendants' product.

18     61.    Defendants, through their affirmative misrepresentations and omissions, actively

19 concealed from Plaintiff and her physicians the true and significant risks associated with long-term

20 Surgimesh implantation.

21     62.    Contrary to Defendants' representations, the Surgimesh mesh has a high rate of

22 failure, injury, and complications associated with its intended use; the product fails to perform as

23 intended resulting in debilitating subsequent revision surgeries for users of the medical device,

24 including Plaintiff.

25     63.    The Defendants' Surgimesh mesh implanted into the Plaintiff was in the same or

26 substantially similar condition as when it left the possession of the Defendants, and in the condition

27

28                                              - 13 -

1   directed by and expected by the Defendants.

2       64.     Defendants advertised, promoted, marketed, sold, and distributed the Surgimesh

3   mesh as a safe medical device when Defendants knew or should have known the Surgimesh mesh

4   was not safe for its intended purposes and that the Surgimesh mesh could cause serious medical

5   problems.

6       65.     Defendants had sole access to material facts concerning the defective nature of the

7   Surgimesh mesh and its propensity to cause serious and dangerous side effects.

8       66.     Defendants under reported information about the propensity of the Surgimesh mesh

9   to fail and cause injury and complications and have made unfounded representations regarding the

10  efficacy and safety of the Surgimesh mesh.

11      67.     In reliance on Defendants' representations, Plaintiff s doctors were induced to, and

12  did use the Defendants' Surgimesh product.

13      68.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered

14  injuries and will require continual monitoring and care.

15      69.     As a result of Defendants' conduct, Plaintiff will incur future medical costs related to

16  the Surgimesh product.

17      70.     As a result of Defendants' actions, Plaintiff and her physicians were unaware, and

18  could not have reasonably known or have learned through reasonable diligence, that Plaintiff would

19  be exposed to the risks identified in this Complaint, and that those risks were the direct and

20  proximate result of Defendants' conduct.

21      71.     As a direct result of being implanted with Surgimesh mesh, Plaintiff has been

22  permanently and severely injured.

23      72.     Plaintiff requires and will in the future require ongoing medical care and treatment,

24  including the possibility of future surgeries.

25      73.     Plaintiff, as a direct and proximate result of the Surgimesh, suffered severe mental

26  and physical pain and suffering and has and will sustain permanent injuries and emotional distress,

27

28

- 14 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

along with economic loss due to medical expenses, and living-related expenses due to her injuries.

74.     Plaintiff's physicians would not have used Surgimesh mesh had Defendants properly disclosed the risks associated with its use.

## IV. STATEMENT OF CLAIMS

## COUNT I: NEGLIGENCE

75.     Plaintiff re-alleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

76.     At all relevant times, Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, and distribution of the Defendants' Surgimesh product, and recruitment and training of physicians to implant the Surgimesh mesh.

77.     Defendants breached the duty of care to the Plaintiff, as aforesaid, in the manufacture, design, labeling, warnings, instructions, sale, marketing, distribution, and recruitment and training of physicians to implant the Surgimesh mesh.

78.     Defendants breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Surgimesh product.

79.     As a direct and proximate result of the duties breached, the Surgimesh failed, causing much pain and suffering experienced by Plaintiff, along with mental anguish, doctor visits, subsequent procedures, and substantial medical bills.

80.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe pain, injuries and damages.

81.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer severe pain and mental anguish.

82.     Defendants' conduct in continuing to market, sell and distribute the Surgimesh after obtaining knowledge that the products were failing and not performing as represented and intended,

- 15 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

showed complete indifference to or a conscious disregard for the safety of others, justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendant and others from similar conduct in the future.

83. Defendants knew or should have known that its failure to exercise ordinary care in the manufacture, design, labeling, warnings, instructions, sale, marketing, distribution and recruitment and training of physicians to implant the Surgimesh would cause foreseeable harm, injuries and damages to individuals such as Plaintiff who are implanted with Surgimesh.

84. As a direct, proximate and foreseeable result of the Defendants' design, manufacture, labeling, marketing, sale, and distribution of the Surgimesh, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

85. Each act or omission of negligence was a proximate cause of the damages and injuries to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants, and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## COUNT II: PRODUCT LIABILITY CLAIM

## DESIGN DEFECT

86. Plaintiff re-alleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein and additionally or in the alternative, if same be necessary, allege as follows:

87. Defendant supplied, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the Surgimesh implanted into Plaintiff. The product was defective in its design in that when it left the hands of Defendant, it was not safe for its anticipated use and safer, more reasonable alternative designs existed that could have been utilized by Defendant. A reasonably

- 16 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  prudent medical device manufacturer would not have placed the Surgimesh with its defective

2  design into the stream of commerce.

3        88.    The Surgimesh was defectively designed when supplied, sold, distributed and/or

4  otherwise placed into the stream of commerce when it was implanted in Plaintiff.

5        89.    The Surgimesh was unreasonably dangerous, taking into consideration the utility of

6  said product and the risks involved in its use. The foreseeable risks associated with the design of the

7  product were more dangerous than a reasonably prudent consumer such as Plaintiff and/or her

8  physician would expect when the product was used for its normal and intended purpose.

9        90.    The Surgimesh reached Plaintiff's implanting surgeon and was implanted in Plaintiff

10 without any substantial change in the condition in which it was supplied, distributed, sold and/or

11 otherwise placed into the stream of commerce.

12       91.    The Surgimesh failed to perform as safely as an ordinary consumer and/or her

13 physician would expect when used as intended or when used in a manner reasonably foreseeable by

14 the manufacturer, and the risks and dangers of the Surgimesh outweigh its benefits. The design

15 defects in the Surgimesh were not known, knowable and/or reasonably apparent to Plaintiff and/or

16 her physician or discoverable upon any reasonable examination. The Surgimesh was used and

17 implanted in the manner in which it was intended to be used and implanted by Defendants pursuant

18 to the instructions for use and the product specifications provided by Defendants.

19       92.    The defective and unreasonably dangerous condition of the Surgimesh was the

20 proximate cause of the damages and injuries complained of by Plaintiff.

21       93.    As a direct and proximate result of the Surgimesh's aforementioned design defects,

22 Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and

23 suffering, severe emotional distress, financial or economic loss, including, but not limited to,

24 obligations for medical services and expenses, and other damages.

25       94.    Defendants are strictly liable to Plaintiff.

26

27

28

- 17 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

WHEREFORE, Plaintiff demands judgment against Defendants and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## MANUFACTURING DEFECT

95. Plaintiff re-alleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein and additionally or in the alternative, if same be necessary, allege as follows:

96. Defendants supplied, manufactured, sold, distributed and/or otherwise placed into the stream of commerce the Surgimesh implanted in Plaintiff. The Surgimesh was defective in its manufacture and construction when it left the hands of Defendant in that its manufacture and construction deviated from good manufacturing practices and/or manufacturing specifications as would be used and/or maintained by a reasonably prudent and careful medical device manufacturer.

97. The Surgimesh as manufactured and constructed by Defendants was unreasonably dangerous to end consumers including Plaintiff and posed an unreasonable degree of risk, danger and harm to Plaintiff.

98. The Surgimesh was expected to reach and did reach Plaintiff's implanting surgeon and Plaintiff without substantial change in the condition in which it was manufactured, supplied, distributed sold and/or otherwise placed in the stream of commerce.

99. The manufacturing defect in the Surgimesh implanted in Plaintiff was not known, knowable or readily apparent to Plaintiff's physician or to Plaintiff. Nor was it discoverable upon any reasonable examination by Plaintiff's physician or Plaintiff. The Surgimesh was used and implanted in the very manner in which it was intended to be used and implanted by Defendant in accordance with the instructions for use and specifications provided by Defendants.

100. The Surgimesh implanted in Plaintiff was different from its intended design and failed to perform as safely as a product manufactured in accordance with the intended design would have performed.

- 18 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

101.    The defective and unreasonably dangerous condition of the Surgimesh product was a proximate cause of damages and injuries suffered by Plaintiff.

102.    As a direct and proximate result of the Surgimesh's aforementioned manufacturing defect, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, and other damages.

103.    Defendant is strictly liable to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## FAILURE TO WARN

104.    Plaintiff realleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein and additionally or in the alternative, if same be necessary, allege as follows:

105.    Defendants manufactured, designed, marketed, sold and/or otherwise placed into the stream of commerce their Surgimesh product.

106.    The Defendants failed to properly and adequately warn and instruct Plaintiff and her treating physician that Surgimesh was designed and/or manufactured in a way that could cause injuries and damages including lasting and permanent injuries. Defendants further failed to inform and further warn Plaintiff and her treating physician with respect to the most effective proper technique and methods of implantation and/or the selection of appropriate candidates to receive Surgimesh.

107.    The Defendants failed to properly and adequately warn and instruct Plaintiff and her treating physician as to the risks and benefits of the Defendants' Surgimesh. To the contrary, Defendants withheld information from Plaintiff and her treating physician regarding the true risks as relates to implantation of their Surgimesh.

- 19 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

108.     The Defendants failed to properly and adequately warn and instruct Plaintiff and her treating physician that inadequate research and testing of the Surgimesh was done prior to Surgimesh being placed on the market and in the stream of commerce and that Defendants lacked a safe, effective procedure for removal of the Surgimesh once complications from same arise.

109.     The Defendant intentionally, recklessly, and maliciously misrepresented the efficacy, safety, risks, and benefits of Surgimesh, understating the risks and exaggerating the benefits in order to advance its own financial interest, with wanton and willful disregard for the rights, safety and health of Plaintiff.

110.     The dangerous and defective conditions in the Surgimesh existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had her implant surgery, the Surgimesh was in the same condition as when manufactured, distributed and sold.

111.     Plaintiff did not know at the time of surgery that the Surgimesh placed during Plaintiff's surgery or at any time prior thereto, of the existence of the defects or dangerous propensities in the Surgimesh.

112.     As a direct and proximate result of the Defendants' design, manufacture, marketing, sale, and distribution of the Surgimesh, Plaintiff has been injured and sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages.

113.     The Defendants are strictly liable in tort to the Plaintiff for their wrongful conduct in failing to properly warn Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, interest, attorneys' fees, costs of suit, and such further relief as the Court deems equitable and just.

## **BREACH OF EXPRESS WARRANTY**

114.     Plaintiff re-alleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein and additionally or in the alternative, if same be necessary, allege as follows:

- 20 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

115.     At all relevant and material times, Defendant manufactured, marketed, sold, distributed and otherwise placed into the stream of commerce the Surgimesh product.

116.     In advertising, marketing and otherwise promoting Surgimesh to physicians, hospitals and other healthcare providers, Defendants' expressly warranted that their Surgimesh was safe for use. In advertising, marketing and otherwise promoting Surgimesh, Defendant intended that physicians, hospitals and other healthcare providers rely upon their representations in an effort to induce them to use Surgimesh for their patients.

117.     The Plaintiff was a person whom the defendants could reasonably have expected to use, consume, or be affected by the Defendant's Surgimesh product, as the Defendant specifically designed the Surgimesh for implantation in patients requiring reinforcement of abdominal wall defects such as Plaintiff.

118.     With respect to Plaintiff, Defendant intended that Surgimesh be implanted in Plaintiff by her treating surgeon in the reasonable and foreseeable manner in which it was implanted and in accordance with the instructions for use and product specifications provided by Defendants. Plaintiff was in privity with Defendants.

119.     Defendants expressly warranted to physicians, hospitals, other healthcare providers and the general public including Plaintiff that Surgimesh was safe and fit for use by consumers including Plaintiff, that it was of merchantable quality, that its risks, side effects and potential complications are minimal and are comparable to other Hernia Mesh Devices, that it was adequately researched and tested and was fit for its intended use. Plaintiff and her physicians and healthcare providers relied upon these express representations and warranties made by Defendants and consequently, Plaintiff was implanted with Defendants' Surgimesh.

120.     Defendants breached express representations and warranties made to Plaintiff and her physicians and healthcare providers with respect to the Surgimesh implanted in Plaintiff including the following particulars:

- 21 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

a)      Defendant represented to Plaintiff and her physicians and healthcare providers through labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions among other ways that the Defendants' Surgimesh was safe, meanwhile Defendant fraudulently withheld and concealed information about the substantial risks of serious injury associated with using Surgimesh;

b)      Defendant represented to Plaintiff and her physicians and healthcare providers that the Defendants' Surgimesh was as safe and/or safer than other alternative procedures and devices then on the market, meanwhile Defendant fraudulently concealed information that demonstrated that Surgimesh was not safer than alternative therapies and products available on the market; and

c)      Defendant represented to Plaintiff and her physicians and healthcare providers that the Defendants' Surgimesh was more efficacious than other alternative procedures, therapies and/or devices. Meanwhile Defendant fraudulently concealed information, regarding the true efficacy of Surgimesh.

121.    At the time of making such express warranties, Defendants knew or should have known that Defendants' Surgimesh does not conform to the express warranties, and Defendants' acts were motivated by financial gain while the adverse consequences of Defendants' conduct was outrageous, fraudulent, oppressive, done with malice or gross negligence and evidenced reckless indifference to Plaintiff's rights, health and safety.

122.    As a direct and proximate result of Defendants' breaches of the aforementioned express warranties, Plaintiff was caused and in the future will be caused to suffer severe personal injuries, pain and suffering, severe emotional distress, financial or economic loss, including, but not limited to, obligations for medical services and expenses, impairment of personal relationships, and other damages.

- 22 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1    WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory

2    damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court

3    deems equitable and just.

4                          **COUNT III: GROSS NEGLIGENCE**

5    123.    Plaintiff re-alleges and incorporates by reference every allegation of this Complaint

6    as if each were set forth fully and completely herein and additionally or in the alternative, if same

7    be necessary, allege as follows:

8    124.    According to the Illinois Pattern Jury Instructions, IPJI 14.01, gross negligence is

9    "willful and wanton conduct" showing actual or deliberate intention to harm or an utter indifference

10   to or conscious disregard for a person's own safety and the safety of others.

11   125.    The acts and omissions of Defendant as alleged herein are of a character and nature

12   that is outrageous, fraudulent, oppressive, done with malice and evidenced reckless disregard for

13   Plaintiff's rights, health and safety and constitute gross negligence and/or willful or intentional

14   indifference or conduct.

15   126.    The acts and omissions of Defendant, whether taken singularly or in combination

16   with others, constitute gross negligence or willful and/or intentional conduct that proximately

17   caused injuries to Plaintiff.

18   WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory

19   damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court

20   deems equitable and just.

21                         **COUNT V: UNJUST ENRICHMENT**

22   127.    Plaintiff re-alleges and incorporates by reference every allegation of this Complaint

23   as if each were set forth fully and completely herein and additionally or in the alternative, if same

24   be necessary, allege as follows:

25   128.    Defendant at all times was the manufacturer, seller, and/or supplier of Surgimesh.

26

27

28
- 23 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

129. Plaintiff was implanted with Defendants' Surgimesh for the purpose of treatment of hernia, and Defendants were paid for Plaintiffs use of said product.

130. Defendant have accepted payment by Plaintiff and/or by others on Plaintiff's behalf for the purchase of the Surgimesh with which Plaintiff was implanted.

131. Plaintiff was not implanted with nor did she receive the medical device that Defendants' represented and warranted to be safe, effective and efficacious and for which Plaintiff paid.

132. Equity demands that Defendant be required to disgorge any and all moneys, profits and/or any other thing of value received by Defendant on account of Plaintiff receiving a product that was substantially different than that which was represented and/or warranted and because of Defendants' conduct, acts and omissions as set out herein.

WHEREFORE, Plaintiff demands judgment against Defendant and requests compensatory damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems equitable and just.

## VICARIOUS LIABILITY

133. Whenever in this complaint it is alleged that Defendants did or omitted to do any act, it is meant that Defendants' officers, agents, servants, employees, or representatives did or omitted to do such act and that at the time such act or omission was done, it was done with the full authorization or ratification of Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, and representatives.

## EQUITABLE TOLLING OF THE APPLICABLE STATUTE OF LIMITATION

134. The running of any statute of limitation has been tolled by reason of the Defendants' fraudulent conduct. Defendants, through affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's treating physicians the true risks associated with Surgimesh.

135. As a result of the Defendants' actions, Plaintiff and Plaintiff's treating physicians were unaware, and could not reasonably know or have learned through reasonable diligence that

- 24 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1   Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and

2   proximate result of Defendants' acts and omissions.

3        136.    Furthermore, Defendants are estopped from relying on any statute of limitations

4   defense because of their fraudulent concealment of the truth regarding the quality and nature of

5   Surgimesh.  Defendants had a duty to disclose the true character, quality and nature of Surgimesh

6   because this was non-public information over which Defendants had and continued to have

7   exclusive control, and because Defendants knew that this information was not available to the

8   Plaintiff, medical providers and/or to health facilities. Defendants is estopped from relying on any

9   statute of limitation because of their intentional concealment of these facts.

10       137.  The Plaintiff had no knowledge that Defendants was engaged in the wrongdoing

11  alleged herein. Because of the fraudulent acts of concealment and wrongdoing by Defendants,

12  Plaintiff could not have reasonably discovered the wrongdoing until less than the applicable

13  limitations period prior to the filing of this action.

## **PRAYER FOR RELIEF**

Plaintiff demands judgment against Defendants and prays for the following relief in accordance with applicable law and equity:

i.     Compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, permanent impairment, mental pain  and suffering, loss of enjoyment of life, past and future health and medical care costs and economic damages including past and future lost earnings and/or earning capacity together with interest and costs as provided by law;

ii.    Reasonable attorneys' fees as provided by law;

iii.   The costs of these proceedings, including past a future cost of the suit incurred herein;

- 25 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

iv.    Prejudgment interest on all damages as is allowed by law;

v.    Such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

PLAINTIFF CAMERON PAYNTER

By his attorneys,

September 8, 2023

By: */s/* Troy A. Brenes      

Alan J. Bernstein
Law Offices of Alan J. Bernstein, Ltd.,
10 S. LaSalle St., Ste. 1420,
Chicago, IL 60603
Telephone: 312-726-2755

Troy A. Brenes, Esq.
BRENES LAW GROUP
100 Spectrum Center Drive, Suite 330
Irvine, CA 92618
Tel: (949) 397-9360
Fax: (949) 607-4192
tbrenes@breneslawgroup.com

- 26 -

FIRST AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL
Case No. 1:22-cv-5160

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360