Alan J. Bernstein
Law Offices of Alan J. Bernstein, Ltd.,
10 S. LaSalle St., Ste. 1420,
Chicago, IL 60603
Telephone: 312-726-2755
ARDC: 3128637

Troy A. Brenes, SBN 249776
(*Admitted Pro Hac Vice*)
BRENES LAW GROUP, P.C.
100 Spectrum Center Drive, Suite 330
Irvine, CA 92618
tbrenes@breneslawgroup.com
Telephone: (949) 397-9360
Facsimile: (949) 607-4192
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CAMERON PAYNTER, | ) Case No.: 1:22-cv-05160 |
| Plaintiff, | ) |
| vs. | ) **SECOND AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| BG MEDICAL, LLC; ASPIDE MEDICAL; CHAMBERLAIN TECHNOLOGIES LLC; MEDICAL MURRAY, INC. and DOES 2 through 100, inclusive, | ) |
| Defendants. | ) |

Plaintiff CAMERON PAYNTER ("Plaintiff"), by and through his undersigned counsel, brings this Complaint at Law against Defendants BG MEDICAL, LLC, ASPIDE MEDICAL, CHAMBERLAIN TECHNOLOGIES LLC and MEDICAL MURRAY, INC. and in support thereof states the following:

1.      This is a device tort action brought on behalf of the above-named Plaintiff arising out of the failure of Defendants' Surgimesh XB surgical mesh device ("Surgimesh" or "product"). As a result, Plaintiff suffered permanent injuries and significant pain and suffering, emotional distress,

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.
100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  lost wages, and diminished quality of life. The Plaintiff respectfully seeks all damages to which he
2  may be legally entitled.

3  ## I. PARTIES & JURISDICTION

4  2.      The Court has jurisdiction over this case pursuant to 28 U.S.C. §1332. Plaintiff's
5  claims for recovery exceed $75,000 in value exclusive of interest and costs, and complete diversity
6  of citizenship exists between Plaintiff and all Defendants.

7  3.      Plaintiff Cameron Paynter ("Plaintiff") is, and was, at all relevant times, a citizen
8  and resident of the State of Indiana and the United States.

9  4.      Defendant BG MEDICAL, LLC (hereinafter "BG MEDICAL), is now, and at all
10  times relevant to this action was, a limited liability company organized under the laws of Illinois
11  and has its principal place of business and headquarters in the state of Illinois located at 21805 W.
12  Field Parkway STE 160, Deer Park, County of Lake. BG MEDICAL has two owners - John
13  Huelskamp and Patricia Huelskamp. Both owners at the time of filing of the original complaint and
14  currently were and remain residents of the State of Illinois. Accordingly, BG Medical is a citizen of
15  Illinois. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the citizenship of an LLC
16  for purposes of the diversity jurisdiction is the citizenship of its members").

17  5.      BG MEDICAL is a distributor for Defendant, ASPIDE MEDICAL d/b/a
18  SURGIMESH (hereinafter "ASPIDE"). Dating back to at least 2009 and continuing until John
19  Huelskamp and Patricia Huelskamp purchased the design and took over the rights and liabilities of
20  for the Surgimesh hernia mesh device product lines from Aspide through CHAMBERLAIN
21  TECHNOLOGIES, LLC. At which point John Huelskamp and Patricia Huelskamp continued
22  distributing and marketing the Surgimesh product lines through BG Medical, but now also became
23  substantially involved in manufacturing the devices and responsible for all post-market surveillance
24  and quality compliance for the devices via their sole ownership of CHAMBERLAIN
25  TECHNOLOGIES, LLC.  BG Medical has been substantially involved in marketing, distribution,
26  and post-market surveillance of the SurgimeshXB hernia mesh device. BG Medical independently

- 2 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  created and maintains numerous methods to market and promote the SurgimeshXB, including

2  multiple websites, brochures, labeling materials, testimonial pages, marketing campaigns, sales

3  representatives, promotional activities and interactions with physician societies, and other

4  promotional tactics. BG Medical markets itself as a "World specialist in surgical textile implants."

5  BG Medical has also been involved in the recruitment and payment to physicians to study and

6  promote the use of SurgimeshXB. Upon information and belief, BG Medical may also have been

7  involved in the design of the SurgimeshXB.

8      6.    Aspide designed and manufactured one of the SurgimeshXB implanted in Plaintiff.

9  Aspide is a foreign (French) entity most closely resembling a corporation, and its headquarters and

10  principal place of business is located at 246 Allee Lavoisier, 42350 La Talaudiere, France.

11     7.    BG Medical has advised Plaintiff's counsel that Aspide is defunct and is no longer

12  functioning as a company. In another case filed by Plaintiff's counsel regarding the same mesh

13  products, Aspide failed to respond to the Complaint and has taken no action to defend itself.

14     8.    MEDICAL MURRAY INC. (hereinafter "MURRAY"), now is, and at all times

15  relevant to this action was, incorporated under the laws of Illinois and has its principal place of

16  business and headquarters in the state of Illinois located at 400 N. Rand Road, North Barrington,

17  County of Lake. MURRAY is the primary manufacturer of SurgimeshXB and manufactured one of

18  the SurgimeshXB products implanted in Plaintiff. MURRAY manufactures the SurgimeshXB to fill

19  orders placed by BG MEDICAL and CHAMBERLAIN who then distribute the product. No owners

20  of Murray are citizens or reside in Indiana. Medical Murray's President, Chairman, and Founder is

21  Phillip M. Leopold and is located at 11323 Winston Willow Court, Windermere, Florida 34786.

22  Medical Murray's Secretary, CEO, and Founder is Andrew R. Leopold and is located at 23178

23  Lochanora Drive, Lake Zurich, Illinois 60047. Medical Murray's agent for service is Brendan

24  Healey and is located at 150 S. Wacker Drive Ste. 2400, Chicago, Illinois 60606.

25     9.    CHAMBERLAIN TECHNOLOGIES, LLC (previously Doe 1 and hereinafter

26  "CHAMBERLAIN") is the current owner of the SurgimeshXB clearance and trademark. BG

27

28

- 3 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

Medical represents that CHAMBERLAIN'S only members are John Huelskamp and Pat Woodward Huelskamp – the same two individuals that are BG Medical's only two members. BG Medical represents that CHAMBERLAIN does not have any other employees or independent contractors except for Medicept, CHAMBERLAIN's regulatory and quality contractor. CHAMBERLAIN was formed on March 4, 2019, under Delaware law. In March 2019, CHAMBERLAIN purchased the clearance and mark for the Surgimesh XB from Aspide. Other than Surgimesh, CHAMBERLAIN has not registered any other products with the FDA. Both members of CHAMBERLAIN, John Huelskamp and Pat Woodward Huelskamp, are citizens of Illinois. Accordingly, CHAMBERLAIN is a citizen of Illinois.

10.     Since its formation, CHAMBERLAIN has been substantially involved in the marketing, manufacturing, distribution, and post-market surveillance of the SurgimeshXB hernia mesh device. It contracts with Medical Murray to manufacture some portion of the device, but upon information and belief remains primarily responsible for setting design and manufacturing parameters for the Surgimesh XB, risk management, document management and control, complaint handling, reporting Surgimesh XB adverse events to the FDA, and sales and marketing of the device.

11.     Does 2 through 100 are currently unknown but may have liability due to involvement in the design, manufacture, promotion, labeling, post-market surveillance, or distribution of the SurgimeshXB implanted in Plaintiff, and/or are liable to Plaintiff due to fraudulent transfer of assets involving Aspide. If and when the identity and involvement of Does 2 through 100 is discovered, Plaintiff will amend the Complaint to indicate their identity, involvement, and basis for liability.

12.     Hereinafter, BG MEDICAL, ASPIDE, MURRAY, and CHAMBERLAIN shall collectively be referred to as "Defendants."

13.     Defendants have conducted business and derived substantial revenue from within the State of Illinois and have sufficient minimum contacts with and intentionally availed themselves of

- 4 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  the Illinois market so as to render the exercise of jurisdiction over Defendants by the Illinois courts

2  consistent with traditional notions of fair play and substantial justice.

3        14.    ASPIDE through its exclusive distributorship with BG MEDICAL with respect to

4  the product at issue in the case at bar, has made or performed contracts or promises substantially

5  connected to the State of Illinois.

6        15.    This court may exercise jurisdiction over Defendants under the laws of Illinois, the

7  Illinois Constitution, and the Constitution of the United States.

8        16.    Venue is proper in this Court as a substantial part of the counts giving rise to this

9  Complaint occurred in Lake and Cook counties of Illinois.[1] This includes the marketing, promotion,

10  labeling, and post-market surveillance by BG Medical regarding the SurgimeshXB. Additionally,

11  contracts were negotiated and entered into between BG Medical, Aspide, and Murray in this state.

12  Upon information and belief, Plaintiff further alleges that Aspide and Murray commonly shipped or

13  manufactured SurgimeshXB to or in Illinois to then be distributed by BG Medical to other states,

14  including the SurgimeshXB implanted in Plaintiff.

15        17.    This Court has jurisdiction over Defendants because the tort(s) here occurred in the

16  State of Illinois.

17  **ALTER EGO**

18        18.    There exists and, at all times herein mentioned, there existed a unity of interest in

19  ownership between BG MEDICAL and CHAMBERLAIN such that any individuality and

20  separateness between them ceased. These Defendants are the alter ego of one another and exerted

21  control over one another.

22        19.    The owners of both BG MEDICAL and CHAMBERLAIN are the same two

23  individuals - John Huelskamp and Pat Woodward Huelskamp. CHAMBERLAIN was created for

24  the purpose of purchasing the Surgimesh FDA clearance and trademark from Aspide when the

25

26  ───────────────

27  [1] BG Medical has submitted sworn testimony in another case that it moved its headquarters from Cook County to Lake County in 2018

- 5 -

28  SECOND AMENDED COMPLAINT FOR DAMAGES               Brenes Law Group, P.C.
AND DEMAND FOR JURY TRIAL

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

company became defunct. Both BG MEDICAL and CHAMBERLAIN perform the same duties and have the same responsibilities as one another with respect to the SurgimeshXB product. The owners of CHAMBERLAIN created the limited liability company and used it to purchase the SurgimeshXB clearance and trademark (rather than making the purchase as BG MEDICAL) in an effort to avoid incurring liability for injuries caused by the product. Adherence to the fiction of the separate existence of BG MEDICAL and CHAMBERLAIN as separate entities distinct from each other would sanction a fraud and/or promote injustice.

20.     At all times herein mentioned, BG MEDICAL and CHAMBERLAIN were the agents, servants, partners, co-conspirators and/or joint venturers of each of the other and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

21.     At all times herein mentioned, the members of BG MEDICAL and CHAMBERLAIN participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of the SurgimeshXB, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff.

## SUCCESSOR LIABILITY

19.     As described above, BG MEDICAL and CHAMBERLAIN are alter egos of each other and should be deemed the same legal entity.

20.     BG MEDICAL and CHAMBERLAIN have successor liability for ASPIDE as they purchased all rights to the device from ASPIDE and ASPIDE ceased to exist.

21.     Thus BG MEDICAL and CHAMBERLAIN are mere continuations of ASPIDE.

- 6 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

## II.  STATEMENT OF FACTS

22.     At all relevant times, each of the Defendants designed, developed, manufactured, licensed, marketed, distributed, sold and/or placed Surgimesh in the stream of commerce, deriving substantial revenue therefrom.

23.     All acts and omissions of each Defendant as described herein were done by its agents, servants, employees, representatives, and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

24.     At all relevant times, each of the Defendants, was and still is a corporation authorized to do business in the State of Illinois.

25.     At all times hereinafter mentioned, upon information and belief, Defendants were and still are business entities actually doing business in the State of Illinois.

26.     At all times hereinafter mentioned, Defendants were engaged in the business of designing, manufacturing, advertising, marketing, and selling surgical mesh products including the Surgimesh XB product, and in pursuit of this business, transacted business within the State of Illinois and contracted to provide goods and services in the State of Illinois.

27.     At all times hereinafter mentioned, upon information and belief, Defendant committed tortious acts inside the State of Illinois, which caused injury to Plaintiff.

28.     At all times hereinafter mentioned, upon information and belief, Defendants expected or should reasonably expect its acts to have consequences in the State of Illinois.

29.     On or about December 12, 2019, Plaintiff was implanted with a Surgimesh XB product (REF#: TINTRACK10, LOT#: F14316A) to repair an incisional hernia.

30.     The Surgimesh XB product implanted in Plaintiff was designed, manufactured, distributed, and/or sold by Defendants, and was intended to be used by surgeons for hernia repair surgeries.

31.     Defendants represented the product to be appropriate and suitable for such purposes.

- 7 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1      32.    Subsequently, as a direct result of the implanted Surgimesh XB product, Plaintiff

2 experienced, among other ailments, scarring of the mesh, a widened keloid, and recurrent ventral

3 hernia defect.

4      33.    The previously placed Surgimesh XB product was not removed. Instead, on or about

5 September 29, 2020, a Surgimesh XB product (REF#: TINTRACK-7, LOT#: Z2458905C) was

6 folded and placed into the ventral hernia defect in the epigastric location of the previously placed

7 Surgimesh XB product.

8      34.    Subsequently the devices failed by substantially contracting, becoming deformed,

9 degrading, causing a foreign body reaction, causing adhesions of omentum and bowel to the mesh,

10 and migrating. Plaintiff suffered severe pain and suffering as a result and required substantial

11 medical care, including surgery on September 8, 2021 to remove the mesh devices. A new

12 Surgimesh XB product (REF#: Trinta C-15, LOT#: Z2459005B) was implanted during the

13 September 8, 2021 surgery.

14     **III. DEFENDANTS' SURGICAL MESH PRODUCT - SURGIMESH**

15      30.    Defendants obtained "clearance" to market the Surgimesh XB product under Section

16 510(k) of the Medical Device Amendments to the Food, Drug, and Cosmetic Act.

17      31.    Section 510(k) permits the marketing of medical devices if the device is substantially

18 equivalent to other legally marketed predicate devices without formal review for the safety or

19 efficacy of the device. The FDA explained the difference between the 510(k) process and the more

20 rigorous "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in

21 *Horn v. Thoratec Corp.*, which the court quoted from:

22

23      A manufacturer can obtain an FDA findings of 'substantial equivalence' by
submitting a premarket notification to the agency in accordance with section 510(k)

24      of the [Food Drug and Cosmetic Act.] 21 U.S.C. § 360(k). A device found to be
'substantially equivalent' to a predicate device is said to be 'cleared' by the FDA (as

25      opposed to "approved" by the agency under a PMA.

26      376. F.3d 163, 167 (3d. Cir. 2004). A pre-market notification submitted under 510(k) is thus

27

            - 8 -

28 SECOND AMENDED COMPLAINT FOR DAMAGES          Brenes Law Group, P.C.
AND DEMAND FOR JURY TRIAL

                                            100 Spectrum Ctr. Dr., Ste. 330,
                                                Irvine, CA 92618
                                                 P: (949) 397-9360

entirely different from a PMA, which must include data sufficient to demonstrate that the product involved is safe and effective.

32.     In *Medtronic, Inc.* v. Lohr, the U.S. Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis…. The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in average of 20 hours …. As on commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification required little information, rarely elicits a negative response form the FDA, and gets processed quickly.

518S. 470, 478-79 (1996).

33.     Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse associated with the drug…and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling …." This obligation extends to post-market monitoring of adverse events/complaints.

34.     Surgimesh XB is a non-absorbable synthetic mesh, made of non-knitted, non-woven fibers of polypropylene, one surface of which is coated with silicone.

35.     Defendants represent that the Surgimesh provides reinforcement of soft tissues while the silicone layer on the opposite side minimized tissue attachment to the mesh.

36.     Defendants did not timely or adequately apprise the public and/or physicians about the risks of using the Surgimesh implanted in Plaintiff.

37.     The polypropylene mesh used in the Surgimesh implanted in Plaintiff was marketed by Defendants as superior to other implantable materials.

38.     The available scientific evidence shows that the polypropylene material is biologically incompatible with human tissue and actually promotes deleterious immune

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1   responses in a large subset of the population.

2          39.    These negative responses promote inflammation of the surrounding tissue and

3   contribute to the development of severe adverse reactions to the mesh.

4          40.    The polypropylene of which the Surgimesh is partially comprised is not stabilized

5   with the types or amounts of anti-oxidants to permit it to resist material degradation *in vivo* [within

6   the body].

7          41.    Due to Defendants' design and manufacturing processes, the Surgimesh's

8   polypropylene mesh component significantly degrades and weakens within the body, resulting in

9   a variety of material failures.

10         42.    The degradation of the polypropylene causes microscopic fissures to form on the

11  surfaces of the polypropylene filaments, creating a nidus for infection and biofilm.

12         43.    Surface degradation also causes flaking of the polypropylene, which increases the

13  surface area of host tissue exposed to the biomaterial and, in turn, increasing the host Foreign Body

14  Response ("FBR") and accelerating the material degradation.

15         44.    The polypropylene component is also prone to shrinking and contracting after

16  being implanted in the human body, which results in multiple severe complications including but

17  not limited to pain, hernia recurrence, organ perforation, device migration, and meshoma.

18         45.    The silicone layer exacerbates the development of biofilms by creating an additional

19  impediment to the human body's defenses to infection.

20         46.    It is well-known in biomaterials research that permanently implanted products

21  incorporating silicone-coated polypropylene increase the risk for erosion and wound dehiscence.

22         47.    The Surgimesh mesh presents and constitutes an unreasonable risk of danger

23  and injury in the following respects:

24         a. the mesh product was not properly manufactured;

25         b. the mesh product was defectively designed;

26         c. the mesh product did not perform as safely as an ordinary consumer/patient would

27                                          - 10 -

expect;

d. the mesh product was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

e. such further and additional defects as discovery and the evidence reveal.

48. As a result of Defendants' actions and inactions, Plaintiff was injured due to the Surgimesh product, which caused Plaintiff various injuries and damages. Plaintiff accordingly seeks damages associated with these injuries.

49. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the Surgimesh mesh was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, was not suitable for the purpose it was intended and was unreasonably likely to injure the products' users.

50. Defendants ignored reports from patients and health care providers throughout the United States of the Surgimesh mesh's failure to perform as intended, which led to the severe and debilitating injuries suffered by Plaintiff and numerous other patients. Rather than doing adequate testing to determine the cause of these injuries or rule out the Surgimesh product's design as the cause of the injuries, Defendants continued to market Surgimesh mesh as a safer and more effective medical device as compared to other available alternative treatment for hernias.

51. Defendants did not timely or adequately apprise the public and physicians of the defects in Surgimesh product, despite Defendants' knowledge that it had failed due to the described defects.

52. Before Plaintiff's implantation of Surgimesh, Defendants' sales representatives, agents, and employees knew of complications and/or other adverse events, including but not limited to:

a. Significantly increased rate, amount, and tenacity of adhesions;

b. Adherence of bacteria to the polypropylene material and silicone;

- 11 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

c. Significantly elevated risk of infection;

d. Extreme difficulty in removal;

e. Grave bodily injury associated with removal;

f. Significant mesh contracture;

g. Mesh rupture;

h. Severe inflammatory response;

i. Significantly increased rate of Fistula;

j. Significantly increased rate of Seroma;

k. Migration;

l. Organ perforation;

m. Sexual dysfunction;

n. Nerve injury;

o. Bowel obstruction;

p. Biofilms,

q. Erosion;

r. Wound dehiscence

53. In addition, Defendants knew or should have known of histopathological and other adverse reactions with the silicone coating used on its Surgimesh product.

54. Defendants' Surgimesh product was at all times utilized and implanted in a manner foreseeable to Defendants, as Defendants generated the instructions for use and created procedures for implanting the mesh.

55. Plaintiff and Plaintiff's physicians foreseeably used and implanted the Defendants' Surgimesh product, and did not misuse, or alter the Surgimesh mesh in an unforeseeable manner.

56. Feasible and suitable alternative procedures and instruments, as well as suitable alternative designs for implantation and treatment of hernias and soft tissue repair have existed at all

- 12 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  times relevant as compared to the Defendants' Surgimesh product.

2    57.    Contrary to Defendants' representations, the Surgimesh product has a high rate of

3  failure, injury, and complications associated with its intended use; the product fails to perform as

4  intended resulting in debilitating subsequent revision surgeries for users of the medical device,

5  including Plaintiff.

6    58.    Despite their knowledge of this dangerous side effect that can result from Surgimesh

7  use, Defendants refused to warn patients, physicians and the medical community about the risks.

8    59.    Plaintiff and Plaintiff's physicians foreseeably used and implanted the Defendants'

9  Surgimesh mesh, and did not misuse, or alter the Surgimesh mesh in an unforeseeable manner.

10    60.    Consumers who have been implanted with Surgimesh, including Plaintiff, have

11  several alternative safer products and biomaterials available for implantation and treatment of

12  hernias, which have existed at all times relevant as compared to Defendants' product.

13    61.    Defendants, through their affirmative misrepresentations and omissions, actively

14  concealed from Plaintiff and her physicians the true and significant risks associated with long-term

15  Surgimesh implantation.

16    62.    Contrary to Defendants' representations, the Surgimesh mesh has a high rate of

17  failure, injury, and complications associated with its intended use; the product fails to perform as

18  intended resulting in debilitating subsequent revision surgeries for users of the medical device,

19  including Plaintiff.

20    63.    The Defendants' Surgimesh mesh implanted into the Plaintiff was in the same or

21  substantially similar condition as when it left the possession of the Defendants, and in the condition

22  directed by and expected by the Defendants.

23    64.    Defendants advertised, promoted, marketed, sold, and distributed the Surgimesh

24  mesh as a safe medical device when Defendants knew or should have known the Surgimesh mesh

25  was not safe for its intended purposes and that the Surgimesh mesh could cause serious medical

26  problems.

27

- 13 -

28  SECOND AMENDED COMPLAINT FOR DAMAGES                                    Brenes Law Group, P.C.
   AND DEMAND FOR JURY TRIAL
                                                                           100 Spectrum Ctr. Dr., Ste. 330,
                                                                           Irvine, CA 92618
                                                                           P: (949) 397-9360

65. Defendants had sole access to material facts concerning the defective nature of the Surgimesh mesh and its propensity to cause serious and dangerous side effects.

66. Defendants under reported information about the propensity of the Surgimesh mesh to fail and cause injury and complications and have made unfounded representations regarding the efficacy and safety of the Surgimesh mesh.

67. In reliance on Defendants' representations, Plaintiff s doctors were induced to, and did use the Defendants' Surgimesh product.

68. As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered injuries and will require continual monitoring and care.

69. As a result of Defendants' conduct, Plaintiff will incur future medical costs related to the Surgimesh product.

70. As a result of Defendants' actions, Plaintiff and his physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff would be exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' conduct.

71. As a direct result of being implanted with Surgimesh mesh, Plaintiff has been permanently and severely injured.

72. Plaintiff requires and will in the future require ongoing medical care and treatment, including the possibility of future surgeries.

73. Plaintiff, as a direct and proximate result of the Surgimesh, suffered severe mental and physical pain and suffering and has and will sustain permanent injuries and emotional distress, along with economic loss due to medical expenses, and living-related expenses due to his injuries.

74. Plaintiff's physicians would not have used Surgimesh mesh had Defendants properly disclosed the risks associated with its use.

- 14 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1

2

IV.
**STATEMENT OF CLAIMS**
**COUNT I: Indiana Product Liability Act**

3

4

75.    Plaintiff re-alleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

5

6

7

8

76.    Defendants designed, manufactured, sold, distributed, and otherwise put the Surgimesh XB devices implanted into Plaintiff into the stream of commerce for the use in the type of hernia repair surgery conducted on Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021.

9

77.    Defendants were in the business of manufacturing and selling the device.

10

11

12

78.    The Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021 were expected to and did reach Plaintiff and his prescribing physician without substantial alteration of the condition in which Defendants sold the devices.

13

14

15

79.    Plaintiff was in the class of persons that Defendants should reasonably have foreseen as being subject to harm from the defective condition of the Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021.

16

17

18

19

80.    The Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021 were unreasonably dangerous because the devices exposed Plaintiff to risk of physical harm not contemplated by an ordinary consumer, including Plaintiff and his prescribing physicians.

20

21

22

23

24

81.    The Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021 were in a defective condition because when Defendants sold, distributed, or transferred the devices the condition of the devices would not have been anticipated by a reasonably expected user or consumer, and was unreasonably dangerous to the consumer when used in the reasonably expected way, i.e. hernia repair surgery.

25

26

27

82.    At all relevant times, Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, and distribution of the

- 15 -

28

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

1  Defendants' Surgimesh product, and recruitment and training of physicians to implant the
2  Surgimesh mesh.

3      83.    Defendants breached the duty of care to the Plaintiff, as aforesaid, in the
4  manufacture, design, labeling, warnings, instructions, sale, marketing, distribution, and recruitment
5  and training of physicians to implant the Surgimesh mesh.

6      84.    Defendants breached their duty by failing to comply with state and federal
7  regulations concerning the study, testing, design, development, manufacture, inspection, production,
8  advertisement, marketing, promotion, distribution, and/or sale of the Surgimesh devices. Defendants
9  further breached this duty of care by failing to provide warnings that adequately disclosed the risk
10 associated with the device and by continuing to sell the device despite knowing its risk exceeded its
11 alleged benefits.

12     85.    The Surgimesh devices was defective in its design in that when it left the hands of
13 Defendants, it was not safe for its anticipated use and safer, its risks outweighed its benefits, and
14 more reasonable alternative designs existed that could have been utilized by Defendants. A
15 reasonably prudent medical device manufacturer would not have placed the Surgimesh with its
16 defective design into the stream of commerce.

17     86.    The Surgimesh devices implanted in Plaintiff were defective in condition in that
18 Defendants failed to properly package or label the product to give reasonable warnings of danger
19 about the product, or to give reasonably complete instructions on proper use of the product.
20 Defendants by exercising reasonable diligence, could have made such warnings or instructions
21 available to Plaintiff and his prescribing physician.

22     88.    The Surgimesh devices reached Plaintiff's implanting surgeons and were implanted
23 in Plaintiff without any substantial changes in the condition in which they was supplied, distributed,
24 sold and/or otherwise placed into the stream of commerce.

25     89.    The Defendants failed to properly and adequately warn and instruct Plaintiff and her
26 prescribing physicians that Surgimesh was designed and/or manufactured in a way that could cause

27

- 16 -

28 SECOND AMENDED COMPLAINT FOR DAMAGES                    Brenes Law Group, P.C.
   AND DEMAND FOR JURY TRIAL
                                                            100 Spectrum Ctr. Dr., Ste. 330,
                                                            Irvine, CA 92618
                                                            P: (949) 397-9360

1   injuries and damages including lasting and permanent injuries. Defendants further failed to inform

2   and further warn Plaintiff and his prescribing physicians with respect to the most effective proper

3   technique and methods of implantation and/or the selection of appropriate candidates to receive

4   Surgimesh.

5          90.    The Defendants failed to properly and adequately warn and instruct Plaintiff and his

6   treating physician as to the risks and benefits of the Defendants' Surgimesh. To the contrary,

7   Defendants withheld information from Plaintiff and his prescribing physicians regarding the true

8   risks as relates to implantation of Surgimesh.

9          91.    The Defendants failed to properly and adequately warn and instruct Plaintiff and his

10  treating physician that inadequate research and testing of the Surgimesh was done prior to

11  Surgimesh being placed on the market and in the stream of commerce and that Defendants lacked a

12  safe, effective procedure for removal of the Surgimesh once complications from same arise.

13         92.    Defendants intentionally, recklessly, and maliciously misrepresented the efficacy,

14  safety, risks, and benefits of Surgimesh, understating the risks and exaggerating the benefits in

15  order to advance its own financial interest, with wanton and willful disregard for the rights, safety

16  and health of Plaintiff.

17         93.    The dangerous and defective conditions in the Surgimesh devices implanted in

18  Plaintiff existed at the time Defendants sold or transferred them. At the time Plaintiff had his

19  implant surgery, the Surgimesh was in the same condition as when manufactured, distributed and

20  sold.

21         94.    Plaintiff did not know at the time of surgery that the Surgimesh placed during

22  Plaintiff's surgery or at any time prior thereto, of the existence of the defects or dangerous

23  propensities in the Surgimesh.

24         95.    Neither Plaintiff, nor his prescribing physicians would have used the Surgimesh XB

25  product in Plaintiff has Defendants adequately disclosed the true associated with the device.

26

27

                                    - 17 -
28  SECOND AMENDED COMPLAINT FOR DAMAGES                    Brenes Law Group, P.C.
    AND DEMAND FOR JURY TRIAL
                                                           100 Spectrum Ctr. Dr., Ste. 330,
                                                                    Irvine, CA 92618
                                                               P: (949) 397-9360

1 | Alternatively, Defendants would have used the devices differently in Plaintiff had the true risk and

2 | proper uses of the device been adequately disclosed.

3 |      96.    The Surgimesh devices implanted in Plaintiff failed to perform as safely as an

4 | ordinary consumer and/or his physician would expect when used as intended or when used in a

5 | manner reasonably foreseeable by the manufacturer, and the risks and dangers of the Surgimesh

6 | outweigh its benefits.

7 |      110.    Defendants' conduct in continuing to market, sell and distribute the Surgimesh after

8 | obtaining knowledge that the products were failing and not performing as represented and intended,

9 | showed complete indifference to or a conscious disregard for the safety of others, justifying an

10 | award of additional damages for aggravating circumstances in such a sum which will serve to deter

11 | Defendant and others from similar conduct in the future.

12 |      111.    Defendants knew or should have known that its failure to exercise ordinary care in

13 | the manufacture, design, labeling, warnings, instructions, sale, marketing, distribution and

14 | recruitment and training of physicians to implant the Surgimesh would cause foreseeable harm,

15 | injuries and damages to individuals such as Plaintiff who are implanted with Surgimesh.

16 |      112.    As a direct, proximate and foreseeable result of the Defendants' inadequate design,

17 | manufacture, labeling, marketing, sale, and distribution of the Surgimesh, Plaintiff has been injured,

18 | sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life,

19 | loss of care, comfort, and consortium, and economic damages.

20 |

21 | **VICARIOUS LIABILITY**

22 |      113.    Whenever in this complaint it is alleged that Defendants did or omitted to do any act,

23 | it is meant that Defendants' officers, agents, servants, employees, or representatives did or omitted

24 | to do such act and that at the time such act or omission was done, it was done with the full

25 | authorization or ratification of Defendants or was done in the normal and routine course and scope

26 | of employment of Defendants' officers, agents, servants, employees, and representatives.

27

- 18 -

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

## EQUITABLE TOLLING OF THE APPLICABLE STATUTE OF LIMITATION

114.    The running of any statute of limitation has been tolled by reason of the Defendants' fraudulent conduct. Defendants, through affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's treating physicians the true risks associated with Surgimesh.

115.    As a result of the Defendants' actions, Plaintiff and Plaintiff's treating physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

116.    Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their fraudulent concealment of the truth regarding the quality and nature of Surgimesh.  Defendants had a duty to disclose the true character, quality and nature of Surgimesh because this was non-public information over which Defendants had and continued to have exclusive control, and because Defendants knew that this information was not available to the Plaintiff, medical providers and/or to health facilities. Defendants is estopped from relying on any statute of limitation because of their intentional concealment of these facts.

117.    The Plaintiff had no knowledge that Defendants was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment and wrongdoing by Defendants, Plaintiff could not have reasonably discovered the wrongdoing until less than the applicable limitations period prior to the filing of this action.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendants and prays for the following relief in accordance with applicable law and equity:

i.    Compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, permanent impairment, mental pain  and suffering, loss of

- 19 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360

enjoyment of life, past and future health and medical care costs and economic damages including past and future lost earnings and/or earning capacity together with interest and costs as provided by law;

       ii.    Reasonable attorneys' fees as provided by law;

       iii.    The costs of these proceedings, including past a future cost of the suit incurred herein;

       iv.    Prejudgment interest on all damages as is allowed by law;

       v.    Such other and further relief as this Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

PLAINTIFF CAMERON PAYNTER

By his attorneys,

October 15, 2025

By: <u>/s/   Troy A. Brenes</u>

Troy A. Brenes, Esq.
BRENES LAW GROUP
100 Spectrum Center Drive, Suite 330
Irvine, CA 92618
Tel: (949) 397-9360
Fax: (949) 607-4192
tbrenes@breneslawgroup.com

Alan J. Bernstein
Law Offices of Alan J. Bernstein, Ltd.,
10 S. LaSalle St., Ste. 1420,
Chicago, IL 60603
Telephone: 312-726-2755

- 20 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney for Plaintiff Cameron Paynter hereby certifies that the forgoing document was served on October 15,2025, in accordance with Fed.R.Civ. P. 5, LR 5.5 and the General Order on Electronic Case Filing pursuant to the District Court's Electronic Case Filing (ECF) system as to the ECF filers.

By: */s/ Troy A. Brenes*
Troy A. Brenes (admitted PHV)

- 21 -

SECOND AMENDED COMPLAINT FOR DAMAGES
AND DEMAND FOR JURY TRIAL

Brenes Law Group, P.C.

100 Spectrum Ctr. Dr., Ste. 330,
Irvine, CA 92618
P: (949) 397-9360