## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CAMERON PAYNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:22-cv-05160 |
| v. | ) | |
| | ) | |
| BG MEDICAL, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MEDICAL MURRAY, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT

NOW COMES Defendant, MEDICAL MURRAY, INC. ("Murray"), by and through its attorneys, TUCKER ELLIS LLP, and hereby submits its Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint for Damages and Demand for Jury Trial ("SAC") as follows:

1. This is a device tort action brought on behalf of the above-named Plaintiff arising out of the failure of Defendants' Surgimesh XB surgical mesh device ("Surgimesh" or product"). As a result, Plaintiff suffered permanent injuries and significant pain and suffering, emotional distress, lost wages, and diminished quality of life. The Plaintiff respectfully seeks all damages to which he may be legally entitled.

**ANSWER**: **To the extent the allegations contained within Paragraph 1 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that Plaintiff brings the instant action relating to Surgimesh XB ("Surgimesh") and seeks damages in relation thereto. Murray denies that Plaintiff suffered injuries as a result of Surgimesh and denies that Plaintiff is entitled to any damages whatsoever from Murray. Further answering, Murray denies any remaining allegations contained within Paragraph 1.**

1

## PARTIES & JURISDICTION

2.      The Court has jurisdiction over this case pursuant to 28 U.S.C. §1332. Plaintiff's claims for recovery exceed $75,000 in value exclusive of interest and costs, and complete diversity of citizenship exists between Plaintiff and all Defendants.

**ANSWER:**      **The allegations contained within Paragraph 2 contain a legal conclusion, to which no response is required. To the extent a response is required, Murray admits only that Plaintiff seeks an amount in excess of $75,000.00.  Murray lacks sufficient knowledge as to the citizenship of parties other than Murray, and therefore denies the remaining allegations contained within Paragraph 2 and demands strict proof thereof.**

3.      Plaintiff Cameron Paynter ("Plaintiff") is, and was, at all relevant times, a citizen and resident of the State of Indiana and the United States.

**ANSWER:**      **Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 3, including as to Plaintiff's characterization of "all relevant times," and therefore denies the same and demands strict proof thereof.**

4.      Defendant BG MEDICAL, LLC (hereinafter "BG MEDICAL), is now, and at all times relevant to this action was, a limited liability company organized under the laws of Illinois and has its principal place of business and headquarters in the state of Illinois located at 21805 W. Field Parkway STE 160, Deer Park, County of Lake. BG MEDICAL has two owners - John Huelskamp and Patricia Huelskamp. Both owners at the time of filing of the original complaint and currently were and remain residents of the State of Illinois. Accordingly, BG Medical is a citizen of Illinois. *See Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998) ("the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members").

**ANSWER:**      **As the allegations contained within Paragraph 4 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 4, including as to Plaintiff's characterization of "all times relevant to this action," and therefore denies the same and demands strict proof thereof.**

5.      BG MEDICAL is a distributor for Defendant, ASPIDE MEDICAL d/b/a SURGIMESH (hereinafter "ASPIDE"). Dating back to at least 2009 and continuing until John Huelskamp and Patricia Huelskamp purchased the design and took over the rights and liabilities of for the Surgimesh hernia mesh device product lines from Aspide through CHAMBERLAIN

TECHNOLOGIES, LLC. At which point John Huelskamp and Patricia Huelskamp continued distributing and marketing the Surgimesh product lines through BG Medical, but now also became substantially involved in manufacturing the devices and responsible for all post-market surveillance and quality compliance for the devices via their sole ownership of CHAMBERLAIN TECHNOLOGIES, LLC. BG Medical has been substantially involved in marketing, distribution, and post-market surveillance of the SurgimeshXB hernia mesh device. BG Medical independently created and maintains numerous methods to market and promote the SurgimeshXB, including multiple websites, brochures, labeling materials, testimonial pages, marketing campaigns, sales representatives, promotional activities and interactions with physician societies, and other promotional tactics. BG Medical markets itself as a "World specialist in surgical textile implants." BG Medical has also been involved in the recruitment and payment to physicians to study and promote the use of SurgimeshXB. Upon information and belief, BG Medical may also have been involved in the design of the SurgimeshXB.

**ANSWER:**     **As the allegations contained within Paragraph 5 are directed toward other Defendants, Murray states that no response is required.**

                    **To the extent a response is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 5 as stated and therefore denies the same and demands strict proof thereof.**

      6.       Aspide designed and manufactured one of the SurgimeshXB implanted in Plaintiff. Aspide is a foreign (French) entity most closely resembling a corporation, and its headquarters and principal place of business is located at 246 Allee Lavoisier, 42350 La Talaudiere, France.

**ANSWER:**     **As the allegations contained within Paragraph 6 are directed toward other Defendants, Murray states that no response is required.**

                    **To the extent a response is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 6 and therefore denies the same and demands strict proof thereof.**

      7.       BG Medical has advised Plaintiff's counsel that Aspide is defunct and is no longer functioning as a company. In another case filed by Plaintiff's counsel regarding the same mesh products, Aspide failed to respond to the Complaint and has taken no action to defend itself.

**ANSWER:**     **As the allegations contained within Paragraph 7 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 7 and therefore denies the same and demands strict proof thereof.**

8. MEDICAL MURRAY INC. (hereinafter "MURRAY"), now is, and at all times relevant to this action was, incorporated under the laws of Illinois and has its principal place of business and headquarters in the state of Illinois located at 400 N. Rand Road, North Barrington, County of Lake. MURRAY is the primary manufacturer of SurgimeshXB and manufactured one of the SurgimeshXB products implanted in Plaintiff. MURRAY manufactures the SurgimeshXB to fill orders placed by BG MEDICAL and CHAMBERLAIN who then distribute the product. No owners of Murray are citizens or reside in Indiana. Medical Murray's President, Chairman, and Founder is Phillip M. Leopold and is located at 11323 Winston Willow Court, Windermere, Florida 34786. Medical Murray's Secretary, CEO, and Founder is Andrew R. Leopold and is located at 23178 Lochanora Drive, Lake Zurich, Illinois 60047. Medical Murray's agent for service is Brendan Healey and is located at 150 S. Wacker Drive Ste. 2400, Chicago, Illinois 60606.

**ANSWER:** Murray admits that it is incorporated under the laws of Illinois and has its principal place of business and headquarters at 400 N. Rand Road, North Barrington, Lake County, Illinois. Murray admits only that it cut and packaged Surgimesh pursuant to contract specifications but denies that it is the "primary manufacturer of Surgimesh XB." Murray lacks sufficient knowledge to admit or deny the allegation in Paragraph 8 that it manufactured at least one of the products implanted in Plaintiff and therefore denies the same and demands strict proof thereof.

**Further answering, Murray admits that Phillip Leopold is Chairman of the Board with no day-to-day activities, that Andrew Leopold is President and CEO, and that its agent for service is Brendan Healey.**

**Murray denies the remaining allegations contained within Paragraph 8 as stated.**

9. CHAMBERLAIN TECHNOLOGIES, LLC (previously Doe 1 and hereinafter "CHAMBERLAIN") is the current owner of the SurgimeshXB clearance and trademark. BG Medical represents that CHAMBERLAIN'S only members are John Huelskamp and Pat Woodward Huelskamp – the same two individuals that are BG Medical's only two members. BG Medical represents that CHAMBERLAIN does not have any other employees or independent contractors except for Medicept, CHAMBERLAIN's regulatory and quality contractor. CHAMBERLAIN was formed on March 4, 2019, under Delaware law. In March 2019,

4

CHAMBERLAIN purchased the clearance and mark for the Surgimesh XB from Aspide. Other than Surgimesh, CHAMBERLAIN has not registered any other products with the FDA. Both members of CHAMBERLAIN, John Huelskamp and Pat Woodward Huelskamp, are citizens of Illinois. Accordingly, CHAMBERLAIN is a citizen of Illinois.

**ANSWER:** **As the allegations contained within Paragraph 9 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, based on information and belief, Chamberlain Technologies, LLC purchased Surgimesh in 2019 and is the current record 510k holder for same. Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 9 and therefore denies the same and demands strict proof thereof.**

10. Since its formation, CHAMBERLAIN has been substantially involved in the marketing, manufacturing, distribution, and post-market surveillance of the SurgimeshXB hernia mesh device. It contracts with Medical Murray to manufacture some portion of the device, but upon information and belief remains primarily responsible for setting design and manufacturing parameters for the Surgimesh XB, risk management, document management and control, complaint handling, reporting Surgimesh XB adverse events to the FDA, and sales and marketing of the device.

**ANSWER:** **To the extent the allegations contained within Paragraph 10 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it cut and packaged Surgimesh pursuant to contract specifications. Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 10 and therefore denies the same and demands strict proof thereof.**

11. Does 2 through 100 are currently unknown but may have liability due to involvement in the design, manufacture, promotion, labeling, post-market surveillance, or distribution of the SurgimeshXB implanted in Plaintiff, and/or are liable to Plaintiff due to fraudulent transfer of assets involving Aspide. If and when the identity and involvement of Does 2 through 100 is discovered, Plaintiff will amend the Complaint to indicate their identity, involvement, and basis for liability.

**ANSWER:** **The allegations contained within Paragraph 11 are not directed toward Murray, and thus, Murray states that no response is required. To the extent a response is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 11 and therefore denies the same and demands strict proof thereof.**

12.     Hereinafter, BG MEDICAL, ASPIDE, MURRAY, and CHAMBERLAIN shall collectively be referred to as "Defendants."

**ANSWER:     Murray denies it can or should be referred to in the collective as "Defendants."**

13.     Defendants have conducted business and derived substantial revenue from within the State of Illinois and have sufficient minimum contacts with and intentionally availed themselves of the Illinois market so as to render the exercise of jurisdiction over Defendants by the Illinois courts consistent with traditional notions of fair play and substantial justice.

**ANSWER:     To the extent the allegations contained within Paragraph 13 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it has conducted business in the State of Illinois and has derived revenue from said business. Murray denies the remaining allegations contained within Paragraph 13 as stated.**

14.     ASPIDE through its exclusive distributorship with BG MEDICAL with respect to the product at issue in the case at bar, has made or performed contracts or promises substantially connected to the State of Illinois.

**ANSWER:     As the allegations contained within Paragraph 14 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 14 and therefore denies the same and demands strict proof thereof.**

15.     This court may exercise jurisdiction over Defendants under the laws of Illinois, the Illinois Constitution, and the Constitution of the United States.

**ANSWER:     To the extent the allegations contained within Paragraph 15 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it is subject to the jurisdiction of this Court but lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 15 and therefore denies the same and demands strict proof thereof.**

16.     Venue is proper in this Court as a substantial part of the counts giving rise to this Complaint occurred in Lake and Cook counties of Illinois. This includes the marketing, promotion, labeling, and post-market surveillance by BG Medical regarding the SurgimeshXB. Additionally,

6

contracts were negotiated and entered into between BG Medical, Aspide, and Murray in this state. Upon information and belief, Plaintiff further alleges that Aspide and Murray commonly shipped or manufactured SurgimeshXB to or in Illinois to then be distributed by BG Medical to other states, including the SurgimeshXB implanted in Plaintiff.

**ANSWER:** **To the extent the allegations contained within Paragraph 16 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits that it entered into certain agreements related to Surgimesh and cut, packaged and shipped Surgimesh in and from the State of Illinois. Murray denies the remaining allegations contained within Paragraph 16 as stated.**

17. This Court has jurisdiction over Defendants because the tort(s) here occurred in the State of Illinois.

**ANSWER:** **To the extent the allegations contained within Paragraph 17 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the allegations contained within Paragraph 17, including that any tort(s) occurred.**

## ALTER EGO

18. There exists and, at all times herein mentioned, there existed a unity of interest in ownership between BG MEDICAL and CHAMBERLAIN such that any individuality and separateness between them ceased. These Defendants are the alter ego of one another and exerted control over one another.

**ANSWER:** **The allegations contained within Paragraph 18 are not directed toward Murray and thus, Murray makes no answer thereto.**

**To the extent an answer is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 18 and therefore denies the same and demands strict proof thereof.**

19. The owners of both BG MEDICAL and CHAMBERLAIN are the same two individuals - John Huelskamp and Pat Woodward Huelskamp. CHAMBERLAIN was created for the purpose of purchasing the Surgimesh FDA clearance and trademark from Aspide when the company became defunct. Both BG MEDICAL and CHAMBERLAIN perform the same duties and have the same responsibilities as one another with respect to the SurgimeshXB product. The owners of CHAMBERLAIN created the limited liability company and used it to purchase the

SurgimeshXB clearance and trademark (rather than making the purchase as BG MEDICAL) in an effort to avoid incurring liability for injuries caused by the product. Adherence to the fiction of the separate existence of BG MEDICAL and CHAMBERLAIN as separate entities distinct from each other would sanction a fraud and/or promote injustice.

**ANSWER:** **The allegations contained within Paragraph 19 are not directed toward Murray and thus, Murray makes no answer thereto.**

**To the extent an answer is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 19 and therefore denies the same and demands strict proof thereof.**

20.     At all times herein mentioned, BG MEDICAL and CHAMBERLAIN were the agents, servants, partners, co-conspirators and/or joint venturers of each of the other and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

**ANSWER:** **The allegations contained within Paragraph 20 are not directed toward Murray and thus, Murray makes no answer thereto.**

**To the extent an answer is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 20 and therefore denies the same and demands strict proof thereof.**

21.     At all times herein mentioned, the members of BG MEDICAL and CHAMBERLAIN participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of the SurgimeshXB, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff.

**ANSWER:** **The allegations contained within Paragraph 21 are not directed toward Murray and thus, Murray makes no answer thereto.**

**To the extent an answer is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 21 and therefore denies the same and demands strict proof thereof.**

## SUCCESSOR LIABILITY

19.     As described above, BG MEDICAL and CHAMBERLAIN are alter egos of each other and should be deemed the same legal entity.[1]

**ANSWER:**     **The allegations contained within Paragraph 19 are not directed toward Murray and thus, Murray makes no answer thereto.**

**To the extent an answer is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 19 and therefore denies the same and demands strict proof thereof.**

20.     BG MEDICAL and CHAMBERLAIN have successor liability for ASPIDE as they purchased all rights to the device from ASPIDE and ASPIDE ceased to exist.

**ANSWER:**     **The allegations contained within Paragraph 20 are not directed toward Murray and thus, Murray makes no answer thereto.**

**To the extent an answer is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 20 and therefore denies the same and demands strict proof thereof.**

21.     Thus BG MEDICAL and CHAMBERLAIN are mere continuations of ASPIDE.

**ANSWER:**     **The allegations contained within Paragraph 21 are not directed toward Murray and thus, Murray makes no answer thereto.**

**To the extent an answer is required, Murray lacks sufficient knowledge to admit or deny the allegations contained within Paragraph 21 and therefore denies the same and demands strict proof thereof.**

## STATEMENT OF FACTS

22.     At all relevant times, each of the Defendants designed, developed, manufactured, licensed, marketed, distributed, sold and/or placed Surgimesh in the stream of commerce, deriving substantial revenue therefrom.

**ANSWER:**     **To the extent the allegations contained within Paragraph 22 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it cut and packaged Surgimesh pursuant to contract specifications. Murray specifically denies that it designed, developed, licensed, marketed, distributed, sold and/or placed Surgimesh into the stream**

---

[1] Following ¶ 21, the Second Amended Complaint (SAC) reverts back to ¶ 19 instead of continuing to ¶ 22. There are other such instances throughout the SAC. *See* ¶ 34, followed by ¶ 30; *see also* ¶ 86 followed by ¶ 88; *see also* ¶ 96, followed by ¶ 110.  Murray's Answer will refer to Plaintiff's misnumbered paragraphs in the SAC.

**of commerce. Further, Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 22 as stated, including as to Plaintiff's characterization of "at all relevant times," and therefore denies the same and demands strict proof thereof.**

23.     All acts and omissions of each Defendant as described herein were done by its agents, servants, employees, representatives, and/or owners, acting in the course and scope of their respective agencies, services, employments and/or ownership.

**ANSWER:     To the extent the allegations contained within Paragraph 23 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the allegations contained within Paragraph 23.**

24.     At all relevant times, each of the Defendants, was and still is a corporation authorized to do business in the State of Illinois.

**ANSWER:     To the extent the allegations contained within Paragraph 24 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits that it is incorporated in Illinois and is – and was previously – authorized to do business in the State of Illinois.  Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 24, including as to Plaintiff's characterization of "all relevant times," and therefore denies the same and demands strict proof thereof.**

25.     At all times hereinafter mentioned, upon information and belief, Defendants were and still are business entities actually doing business in the State of Illinois.

**ANSWER:     To the extent the allegations contained within Paragraph 25 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it is – and was – a business entity registered in the State of Illinois.  Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 25, including as to Plaintiff's characterization of "all relevant times," and therefore denies the same and demands strict proof thereof.**

26.     At all times hereinafter mentioned, Defendants were engaged in the business of designing, manufacturing, advertising, marketing, and selling surgical mesh products including the Surgimesh XB product, and in pursuit of this business, transacted business within the State of Illinois and contracted to provide goods and services in the State of Illinois.

**ANSWER:** To the extent the allegations contained within Paragraph 26 are directed toward other Defendants, Murray states that no response is required.

As to Murray, it admits that it cut and packaged Surgimesh pursuant to contract specifications. Murray further admits that it has transacted business and entered into contracts in the State of Illinois. Murray specifically denies that it designed, advertised, marketed, or sold Surgimesh. Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 26, including as to Plaintiff's characterization of "all relevant times," and therefore denies the same and demands strict proof thereof.

27. At all times hereinafter mentioned, upon information and belief, Defendant committed tortious acts inside the State of Illinois, which caused injury to Plaintiff.

**ANSWER:** To the extent the allegations contained within Paragraph 27 are directed toward other Defendants, Murray states that no response is required.

As to Murray, it denies that it committed tortious acts and denies any remaining allegations contained within Paragraph 27.

28. At all times hereinafter mentioned, upon information and belief, Defendants expected or should reasonably expect its acts to have consequences in the State of Illinois.

**ANSWER:** To the extent the allegations contained within Paragraph 28 are directed toward other Defendants, Murray states that no response is required.

As to Murray, it denies that it committed tortious acts and denies any remaining allegations contained within Paragraph 28.

29. On or about December 12, 2019, Plaintiff was implanted with a Surgimesh XB product (REF#: TINTRACK10, LOT#: F14316A) to repair an incisional hernia.

**ANSWER:** Murray lacks sufficient knowledge to admit or deny the allegations regarding when, if or why Plaintiff was implanted with Surgimesh contained within Paragraph 29 and therefore denies the same and demands strict proof thereof.

Further answering, Murray specifically denies that it had any involvement with Surgimesh LOT# F14316A.

30. The Surgimesh XB product implanted in Plaintiff was designed, manufactured, distributed, and/or sold by Defendants, and was intended to be used by surgeons for hernia repair surgeries.

**ANSWER:** To the extent the allegations contained within Paragraph 30 are directed toward other Defendants, Murray states that no response is required.

11

**As to Murray, it specifically denies that it had any involvement with Surgimesh LOT# F14316A, and denies that it designed, distributed, or sold Surgimesh. Murray admits, based on information and belief, that the Surgimesh label states it is indicated for use in *the reinforcement of tissues during surgical repair*, including treatment of hernias. Murray denies any remaining allegations contained within Paragraph 30.**

31.     Defendants represented the product to be appropriate and suitable for such purposes.

**ANSWER:     To the extent the allegations contained within Paragraph 31 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it made public representations or warranties as to Surgimesh and denies any remaining allegations contained within Paragraph 31.**

32.     Subsequently, as a direct result of the implanted Surgimesh XB product, Plaintiff experienced, among other ailments, scarring of the mesh, a widened keloid, and recurrent ventral hernia defect.

**ANSWER:     Murray denies the allegations contained within Paragraph 32.**

33.     The previously placed Surgimesh XB product was not removed. Instead, on or about September 29, 2020, a Surgimesh XB product (REF#: TINTRACK-7, LOT#: Z2458905C) was folded and placed into the ventral hernia defect in the epigastric location of the previously placed Surgimesh XB product.

**ANSWER:     Murray lacks sufficient knowledge to admit or deny the allegations regarding any removal or lack of removal as to Surgimesh (REF#: TINTRACK10, LOT#: F14316A) and regarding when, if, why or how Plaintiff was implanted with a second piece of Surgimesh (REF#: TINTRACK-7, LOT#: Z2458905C) as stated in Paragraph 33 and therefore denies the same and demands strict proof thereof.**

34.     Subsequently the devices failed by substantially contracting, becoming deformed, degrading, causing a foreign body reaction, causing adhesions of omentum and bowel to the mesh, and migrating. Plaintiff suffered severe pain and suffering as a result and required substantial medical care, including surgery on September 8, 2021 to remove the mesh devices. A new Surgimesh XB product (REF#: Trinta C-15, LOT#: Z2459005B) was implanted during the September 8, 2021 surgery.

12

**ANSWER:**     **To the extent the allegations contained in Paragraph 34 are directed towards other Defendants (*i.e.*, as to Surgimesh (REF#: TINTRACK10, LOT#: F14316A)), Murray states that no responses is required.**

**As to Murray, it denies Surgimesh (REF#: TINTRACK-7, LOT#: Z2458905C) failed or caused the alleged injuries. Further answering, Murray lacks sufficient knowledge to admit or deny the allegations regarding removal of Surgimesh devices on September 8, 2021 and regarding if or when Plaintiff was implanted with a third Surgimesh product (REF#: Trinta C-15, LOT#: Z2459005B). Murray therefore denies the same and demands strict proof thereof. Murray denies any remaining allegations contained within Paragraph 34.**

### DEFENDANTS' SURGICAL MESH PRODUCT - SURGIMESH

30.     Defendants obtained "clearance" to market the Surgimesh XB product under Section 510(k) of the Medical Device Amendments to the Food, Drug, and Cosmetic Act.

**ANSWER:**     **To the extent the allegations contained within Paragraph 30 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, based on information and belief, Murray admits that Surgimesh received marketing authorization from FDA via the 510(k) premarket notification process.**

31.     Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, which the court quoted from:

> A manufacturer can obtain an FDA findings of 'substantial equivalence' by submitting a premarket notification to the agency in accordance with section 510(k) of the [Food Drug and Cosmetic Act.] 21 U.S.C. § 360(k). A device found to be 'substantially equivalent' to a predicate device is said to be 'cleared' by the FDA (as opposed to "approved" by the agency under a PMA).

376. F.3d 163, 167 (3d. Cir. 2004). A pre-market notification submitted under 510(k) is thus entirely different from a PMA, which must include data sufficient to demonstrate that the product involved is safe and effective.

**ANSWER:**     **Paragraph 31 recites case law and states legal conclusions, neither of which requires an answer from Murray.**

> **To the extent a response is required, Murray denies that Plaintiff's summary of FDA statements accurately describes the 510(k) process, denies the implication that 510(k) products are not safe and effective, and denies any remaining allegations contained within Paragraph 31.**

32.     In *Medtronic, Inc.* v. Lohr, the U.S. Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis.... The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in average of 20 hours .... As on commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification required little information, rarely elicits a negative response form the FDA, and gets processed quickly.

> 518S. 470, 478-79 (1996).

**ANSWER:**     **Paragraph 32 recites case law and states legal conclusions, neither of which requires an answer from Murray.**

> **To the extent a response is required, Murray denies that Plaintiff's summary of *Medtronic* accurately describes the 510(k) process, denies the implication that 510(k) products are not safe and effective, and denies any remaining allegations contained within Paragraph 32.**

33.     Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse associated with the drug...and must periodically submit any new information that may affect the FDA's previous conclusions about the safety, effectiveness, or labeling ...." This obligation extends to post-market monitoring of adverse events/complaints.

**ANSWER:**     **Paragraph 33 recites case law and states legal conclusions, neither of which requires an answer from Murray. To the extent a response is required, Murray denies that Plaintiff's summary of *Levine* accurately describes 510(k) obligations.**

34.     Surgimesh XB is a non-absorbable synthetic mesh, made of non-knitted, nonwoven fibers of polypropylene, one surface of which is coated with silicone.

**ANSWER:**     **Murray admits that the Surgimesh at issue is comprised "of non-knitted, nonwomen fibers of polypropylene[.]" Murray denies the remaining allegations contained within Paragraph 34 as stated.**

35.     Defendants represent that the Surgimesh provides reinforcement of soft tissues while the silicone layer on the opposite side minimized tissue attachment to the mesh.

**ANSWER:     To the extent the allegations contained within Paragraph 35 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it made such representations and denies that all Surgimesh is coated with silicone.**

36.     Defendants did not timely or adequately apprise the public and/or physicians about the risks of using the Surgimesh implanted in Plaintiff.

**ANSWER:     To the extent the allegations contained within Paragraph 36 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the implication that it had an obligation to apprise the public and/or physicians about Surgimesh and denies any remaining allegations contained within Paragraph 36.**

37.     The polypropylene mesh used in the Surgimesh implanted in Plaintiff was marketed by Defendants as superior to other implantable materials.

**ANSWER:     To the extent the allegations contained within Paragraph 37 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it marketed Surgimesh or made representations as to its superiority.**

38.     The available scientific evidence shows that the polypropylene material is biologically incompatible with human tissue and actually promotes deleterious immune responses in a large subset of the population.

**ANSWER:     Murray denies the allegations made within Paragraph 38.**

39.     These negative responses promote inflammation of the surrounding tissue and contribute to the development of severe adverse reactions to the mesh.

**ANSWER:     Murray denies the allegations made within Paragraph 39.**

40.     The polypropylene of which the Surgimesh is partially comprised is not stabilized with the types or amounts of anti-oxidants to permit it to resist material degradation *in vivo* [within the body].

**ANSWER:     Murray denies the allegations made within Paragraph 40.**

41.     Due to Defendants' design and manufacturing processes, the Surgimesh's polypropylene mesh component significantly degrades and weakens within the body, resulting in a variety of material failures.

**ANSWER:**      **To the extent the allegations contained within Paragraph 41 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it designed Surgimesh and denies any remaining allegations made within Paragraph 41.**

42.     The degradation of the polypropylene causes microscopic fissures to form on the surfaces of the polypropylene filaments, creating a nidus for infection and biofilm.

**ANSWER:       Murray denies the allegations made within Paragraph 42.**

43.     Surface degradation also causes flaking of the polypropylene, which increases the surface area of host tissue exposed to the biomaterial and, in turn, increasing the host Foreign Body Response ("FBR") and accelerating the material degradation.

**ANSWER:       Murray denies the allegations made within Paragraph 43.**

44.     The polypropylene component is also prone to shrinking and contracting after being implanted in the human body, which results in multiple severe complications including but not limited to pain, hernia recurrence, organ perforation, device migration, and meshoma.

**ANSWER:       Murray denies the allegations made within Paragraph 44.**

45.     The silicone layer exacerbates the development of biofilms by creating an additional impediment to the human body's defenses to infection.

**ANSWER:       Murray denies the allegations made within Paragraph 45.**

46.     It is well-known in biomaterials research that permanently implanted products incorporating silicone-coated polypropylene increase the risk for erosion and wound dehiscence.

**ANSWER:       Murray denies the allegations made within Paragraph 46.**

47.     The Surgimesh mesh presents and constitutes an unreasonable risk of danger and injury in the following respects:

    a.     the mesh product was not properly manufactured;
    b.     the mesh product was defectively designed;
    c.     the mesh product did not perform as safely as an ordinary consumer/patient would expect;

16

d.    the mesh product was inadequate or insufficient to maintain its integrity during normal use after implantation in the consumer/patient; and

e.    such further and additional defects as discovery and the evidence reveal.

**ANSWER:**    **To the extent the allegations contained within Paragraph 47 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray specifically denies that it designed Surgimesh and denies that it improperly manufactured Surgimesh. Further, Murray denies the remaining allegations contained within Paragraph 47.**

48.    As a result of Defendants' actions and inactions, Plaintiff was injured due to the Surgimesh product, which caused Plaintiff various injuries and damages. Plaintiff accordingly seeks damages associated with these injuries.

**ANSWER:**    **To the extent the allegations contained within Paragraph 48 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the allegations made within Paragraph 48 and denies that Plaintiff is entitled to any damages.**

49.    At all times herein mentioned, Defendants knew, or in the exercise of reasonable care should have known, that the Surgimesh mesh was not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied, prepared and/or provided with proper warnings, was not suitable for the purpose it was intended and was unreasonably likely to injure the products' users.

**ANSWER:**    **To the extent the allegations contained within Paragraph 49 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it packaged, labeled, distributed, marketed, sold, supplied, prepared and/or provided warnings for Surgimesh and, specifically denies that its Surgimesh was improperly manufactured or tested. Further, Murray denies that it had any involvement with Surgimesh LOT# F14316A and denies the remaining allegations made within Paragraph 49 as stated.**

50.    Defendants ignored reports from patients and health care providers throughout the United States of the Surgimesh mesh's failure to perform as intended, which led to the severe and debilitating injuries suffered by Plaintiff and numerous other patients. Rather than doing adequate testing to determine the cause of these injuries or rule out the Surgimesh product's design as the cause of the injuries, Defendants continued to market Surgimesh mesh as a safer and more effective medical device as compared to other available alternative treatment for hernias.

**ANSWER:** **To the extent the allegations contained within Paragraph 50 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray specifically denies that it had any obligation as to complaint reports or that it designed or marketed Surgimesh. Murray denies the remaining allegations made within Paragraph 50.**

51.     Defendants did not timely or adequately apprise the public and physicians of the defects in Surgimesh product, despite Defendants' knowledge that it had failed due to the described defects.

**ANSWER:** **To the extent the allegations contained within Paragraph 51 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray denies that its Surgimesh was defective, that it had any obligation to apprise the public and physicians of alleged "defects," and denies the remaining allegations made within Paragraph 51.**

52.     Before Plaintiff's implantation of Surgimesh, Defendants' sales representatives, agents, and employees knew of complications and/or other adverse events, including but not limited to:

      a.     Significantly increased rate, amount, and tenacity of adhesions;
      b.     Adherence of bacteria to the polypropylene material and silicone;
      c.     Significantly elevated risk of infection;
      d.     Extreme difficulty in removal;
      e.     Grave bodily injury associated with removal;
      f.     Significant mesh contracture;
      g.     Mesh rupture;
      h.     Severe inflammatory response;
      i.     Significantly increased rate of Fistula;
      j.     Significantly increased rate of Seroma;
      k.     Migration;
      l.     Organ perforation;
      m.     Sexual dysfunction;
      n.     Nerve injury;
      o.     Bowel obstruction;
      p.     Biofilms,
      q.     Erosion;
      r.     Wound dehiscence

**ANSWER:** **To the extent the allegations contained within Paragraph 52 are directed toward other Defendants, Murray states that no response is required.**

18

**As to Murray, it denies awareness of potential complications and/or other adverse events beyond those identified in Surgimesh labeling or common to any medical device implant surgery. Further, Murray denies any remaining allegations made within Paragraph 52.**

53.     In addition, Defendants knew or should have known of histopathological and other adverse reactions with the silicone coating used on its Surgimesh product.

**ANSWER:     To the extent the allegations contained within Paragraph 53 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it knew or should have known of potential adverse reactions beyond those identified in Surgimesh labeling or common to any medical device implant surgery. Murray denies the remaining allegations made within Paragraph 53.**

54.     Defendants' Surgimesh product was at all times utilized and implanted in a manner foreseeable to Defendants, as Defendants generated the instructions for use and created procedures for implanting the mesh.

**ANSWER:     To the extent the allegations contained within Paragraph 54 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it specifically denies that it generated the instructions for use or created procedures for implanting Surgimesh. Further, Murray lacks sufficient knowledge to admit or deny the allegation that Surgimesh was utilized and implanted in a foreseeable manner and therefore denies the same and demands strict proof thereof.**

55.     Plaintiff and Plaintiff's physicians foreseeably used and implanted the Defendants' Surgimesh product, and did not misuse, or alter the Surgimesh mesh in an unforeseeable manner.

**ANSWER:     To the extent the allegations contained within Paragraph 55 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it had any involvement with Surgimesh LOT# F14316A and lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 55 and therefore denies the same and demands strict proof thereof.**

56.     Feasible and suitable alternative procedures and instruments, as well as suitable alternative designs for implantation and treatment of hernias and soft tissue repair have existed at all times relevant as compared to the Defendants' Surgimesh product.

**ANSWER:     To the extent the allegations contained within Paragraph 56 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray specifically denies that it designed Surgimesh and denies the remaining allegations contained within Paragraph 56.**

57.     Contrary to Defendants' representations, the Surgimesh product has a high rate of failure, injury, and complications associated with its intended use; the product fails to perform as intended resulting in debilitating subsequent revision surgeries for users of the medical device, including Plaintiff.

**ANSWER:**     **To the extent the allegations contained within Paragraph 57 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray specifically denies that it made representations regarding Surgimesh and denies the remaining allegations contained within Paragraph 57.**

58.     Despite their knowledge of this dangerous side effect that can result from Surgimesh use, Defendants refused to warn patients, physicians and the medical community about the risks.

**ANSWER:**     **To the extent the allegations contained within Paragraph 58 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray specifically denies any allegation that it had an obligation to warn and denies the remaining allegations contained within Paragraph 58.**

59.     Plaintiff and Plaintiff's physicians foreseeably used and implanted the Defendants' Surgimesh mesh, and did not misuse, or alter the Surgimesh mesh in an unforeseeable manner.

**ANSWER:**     **To the extent the allegations contained within Paragraph 59 are directed toward other Defendants, Murray states that no response is required.**

> **As to Murray, it denies that it had any involvement with Surgimesh LOT# F14316A and lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 59 and therefore denies the same and demands strict proof thereof.**

60.     Consumers who have been implanted with Surgimesh, including Plaintiff, have several alternative safer products and biomaterials available for implantation and treatment of hernias, which have existed at all times relevant as compared to Defendants' product.

**ANSWER:**     **To the extent the allegations contained within Paragraph 60 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray specifically denies that it designed Surgimesh or had any involvement with Surgimesh LOT# F14316A. Further, Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 60 and therefore denies the same and demands strict proof thereof.**

61.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and her physicians the true and significant risks associated with long-term Surgimesh implantation.

**ANSWER:**     **To the extent the allegations contained within Paragraph 61 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray specifically denies that it made representations or omissions as to Surgimesh and denies the remaining allegations contained within Paragraph 61.**

62.     Contrary to Defendants' representations, the Surgimesh mesh has a high rate of failure, injury, and complications associated with its intended use; the product fails to perform as intended resulting in debilitating subsequent revision surgeries for users of the medical device, including Plaintiff.

**ANSWER:**     **To the extent the allegations contained within Paragraph 62 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray denies that it made representations as to Surgimesh and denies the remaining allegations contained within Paragraph 62.**

63.     The Defendants' Surgimesh mesh implanted into the Plaintiff was in the same or substantially similar condition as when it left the possession of the Defendants, and in the condition directed by and expected by the Defendants.

**ANSWER:**     **To the extent the allegations contained within Paragraph 63 are directed toward other Defendants, Murray states that no response is required.**

> **As to Murray, it denies that it had any involvement with Surgimesh LOT# F14316A and lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 63 and therefore denies the same and demands strict proof thereof.**

64.     Defendants advertised, promoted, marketed, sold, and distributed the Surgimesh mesh as a safe medical device when Defendants knew or should have known the Surgimesh mesh

was not safe for its intended purposes and that the Surgimesh mesh could cause serious medical problems.

**ANSWER:** **The allegations contained within Paragraph 64 are directed toward other Defendants and, thus, Murray states that no response is required.**

> **To the extent a response is required, Murray denies that it advertised, promoted, marketed, sold, or distributed Surgimesh and therefore denies the allegations contained within Paragraph 64.**

65.     Defendants had sole access to material facts concerning the defective nature of the Surgimesh mesh and its propensity to cause serious and dangerous side effects.

**ANSWER:** **To the extent the allegations contained within Paragraph 65 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray denies the allegations contained within Paragraph 65.**

66.     Defendants under reported information about the propensity of the Surgimesh mesh to fail and cause injury and complications and have made unfounded representations regarding the efficacy and safety of the Surgimesh mesh.

**ANSWER:** **To the extent the allegations contained within Paragraph 66 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray specifically denies the implication that it was under an obligation to report Surgimesh complications and denies that it made representations regarding the safety and efficacy of Surgimesh.**

67.     In reliance on Defendants' representations, Plaintiff s doctors were induced to, and did use the Defendants' Surgimesh product.

**ANSWER:** **To the extent the allegations contained within Paragraph 67 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray denies that it made representations to Plaintiff's doctors, denies that it had any involvement with Surgimesh LOT# F14316A, and denies the remaining allegations contained within Paragraph 67.**

68.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered injuries and will require continual monitoring and care.

**ANSWER:** **To the extent the allegations contained within Paragraph 68 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the allegations contained within Paragraph 68.**

69.     As a result of Defendants' conduct, Plaintiff will incur future medical costs related to the Surgimesh product.

**ANSWER:     To the extent the allegations contained within Paragraph 69 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the allegations contained within Paragraph 69.**

70.     As a result of Defendants' actions, Plaintiff and his physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff would be exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' conduct.

**ANSWER:     To the extent the allegations contained within Paragraph 70 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the allegations contained within Paragraph 70.**

71.     As a direct result of being implanted with Surgimesh mesh, Plaintiff has been permanently and severely injured.

**ANSWER:     Murray specifically denies that it had any involvement with Surgimesh LOT# F14316A and denies the remaining allegations contained within Paragraph 71.**

72.     Plaintiff requires and will in the future require ongoing medical care and treatment, including the possibility of future surgeries.

**ANSWER:     Murray denies the allegations contained within Paragraph 72.**

73.     Plaintiff, as a direct and proximate result of the Surgimesh, suffered severe mental and physical pain and suffering and has and will sustain permanent injuries and emotional distress, along with economic loss due to medical expenses, and living-related expenses due to his injuries.

**ANSWER:     Murray denies the allegations contained within Paragraph 73.**

74.     Plaintiff's physicians would not have used Surgimesh mesh had Defendants properly disclosed the risks associated with its use.

**ANSWER:     To the extent the allegations contained within Paragraph 74 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray denies the implication that it had an obligation to disclose product risks and denies the remaining allegations contained within Paragraph 74.**

## STATEMENT OF CLAIMS
### COUNT I: Indiana Product Liability Act

75.    Plaintiff re-alleges and incorporates by reference every allegation of this Complaint as if each were set forth fully and completely herein.

**ANSWER:**    **Murray repeats and restates its answers to each Paragraph of the Complaint incorporated by reference into Count I as if fully set forth herein.**

76.    Defendants designed, manufactured, sold, distributed, and otherwise put the Surgimesh XB devices implanted into Plaintiff into the stream of commerce for the use in the type of hernia repair surgery conducted on Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021.

**ANSWER:**    **To the extent the allegations contained within Paragraph 76 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it cut and packaged Surgimesh LOT# Z2458905C and Z2459005B pursuant to contract specifications. Murray lacks sufficient knowledge to admit or deny the allegations regarding when, if or why Plaintiff was implanted with Surgimesh contained within Paragraph 76 and therefore denies the same and demands strict proof thereof. Further answering, Murray specifically denies that it had any involvement with Surgimesh LOT# F14316A and denies that it designed, publicly sold, distributed, and/or placed any Surgimesh into the stream of commerce, and denies any remaining allegations contained within Paragraph 76.**

77.    Defendants were in the business of manufacturing and selling the device.

**ANSWER:**    **To the extent the allegations contained within Paragraph 77 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it cut and packaged Surgimesh LOT# Z2458905C and Z2459005B pursuant to contract specifications. Murray specifically denies that it had any involvement with LOT# F14316A and further denies that it sold Surgimesh to Plaintiff's implanting physicians or their facilities.**

78.    The Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021 were expected to and did reach Plaintiff and his prescribing physician without substantial alteration of the condition in which Defendants sold the devices.

**ANSWER:**     **To the extent the allegations contained within Paragraph 78 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it had any involvement with Surgimesh LOT# F14316A and lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 78 and therefore denies the same and demands strict proof thereof.**

79.     Plaintiff was in the class of persons that Defendants should reasonably have foreseen as being subject to harm from the defective condition of the Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021.

**ANSWER:**     **To the extent the allegations contained within Paragraph 79 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies any involvement with Surgimesh LOT# F14316A and denies that Surgimesh LOT# Z2458905C and Z2459005B were defective. Murray lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 79 and therefore denies the same and demands strict proof thereof.**

80.     The Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021 were unreasonably dangerous because the devices exposed Plaintiff to risk of physical harm not contemplated by an ordinary consumer, including Plaintiff and his prescribing physicians.

**ANSWER:**     **To the extent the allegations contained within Paragraph 80 are directed toward other Defendants, Murray states that no response is required.**

**To the extent a response is required, Murray specifically denies that it had any involvement with Surgimesh LOT# F14316A and further denies the remaining allegations contained within Paragraph 80.**

81.     The Surgimesh XB devices implanted in Plaintiff on December 12, 2019, September 29, 2020, and September 8, 2021 were in a defective condition because when Defendants sold, distributed, or transferred the devices the condition of the devices would not have been anticipated by a reasonably expected user or consumer, and was unreasonably dangerous to the consumer when used in the reasonably expected way, i.e. hernia repair surgery.

**ANSWER:**     **To the extent the allegations contained within Paragraph 81 are directed toward other Defendants, Murray states that no response is required.**

> **To the extent a response is required, Murray specifically denies that it had any involvement with Surgimesh LOT# F14316A and further denies the remaining allegations contained within Paragraph 81.**

82. At all relevant times, Defendants had a duty to exercise reasonable and ordinary care in the manufacture, design, labeling, instructions, warnings, sale, marketing, and distribution of the Defendants' Surgimesh product, and recruitment and training of physicians to implant the Surgimesh mesh.

**ANSWER:** **To the extent the allegations contained within Paragraph 82 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only to those duties imposed upon itself by law. Murray affirmatively states that at all times relevant to Plaintiff's SAC, it was in compliance with all duties imposed by law. Further answering, Murray denies that it designed, labeled, provided instructions or warnings for, publicly sold, marketed, distributed, or recruited and trained physicians on Surgimesh, denies that it had any involvement with Surgimesh LOT# F14316A, and denies any remaining allegations contained within Paragraph 82 as stated.**

83. Defendants breached the duty of care to the Plaintiff, as aforesaid, in the manufacture, design, labeling, warnings, instructions, sale, marketing, distribution, and recruitment and training of physicians to implant the Surgimesh mesh.

**ANSWER:** **To the extent the allegations contained within Paragraph 83 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it specifically denies that it designed, labeled, provided instructions or warnings for, publicly sold, marketed, distributed, or recruited and trained physicians on Surgimesh, denies that it had any involvement with Surgimesh LOT# F14316A, and denies the remaining allegations contained within Paragraph 83 as stated.**

84. Defendants breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Surgimesh devices. Defendants further breached this duty of care by failing to provide warnings that adequately disclosed the risk associated with the device and by continuing to sell the device despite knowing its risk exceeded its alleged benefits.

**ANSWER:** **To the extent the allegations contained within Paragraph 84 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it specifically denies that it designed, developed, advertised, marketed, promoted, distributed, provided warnings for, and/or publicly sold Surgimesh, denies that it had any involvement with Surgimesh LOT# F14316A, and denies the remaining allegations contained within Paragraph 84 as stated.**

85. The Surgimesh devices was defective in its design in that when it left the hands of Defendants, it was not safe for its anticipated use and safer, its risks outweighed its benefits, and more reasonable alternative designs existed that could have been utilized by Defendants. A reasonably prudent medical device manufacturer would not have placed the Surgimesh with its defective design into the stream of commerce.

**ANSWER:** **To the extent the allegations contained within Paragraph 85 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it cut and packaged Surgimesh pursuant to contract specifications, but specifically denies that it had any involvement with Surgimesh LOT# F14316A. Murray further denies it designed, supplied, publicly sold, distributed or otherwise placed Surgimesh into the stream of commerce and, denies the remaining allegations contained within Paragraph 85.**

86. The Surgimesh devices implanted in Plaintiff were defective in condition in that Defendants failed to properly package or label the product to give reasonable warnings of danger about the product, or to give reasonably complete instructions on proper use of the product. Defendants by exercising reasonable diligence, could have made such warnings or instructions available to Plaintiff and his prescribing physician.

**ANSWER:** **To the extent the allegations contained within Paragraph 86 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it admits only that it packaged Surgimesh Lot Z2458905C and Z2459005B according to the 510k holder's specifications, but Murray specifically denies those lots were defective because of said packaging. Murray further denies that it created Surgimesh label content or instructions for use, denies any involvement with Surgimesh Lot F14316A, and denies any remaining allegations contained within Paragraph 86 as stated.**

88. The Surgimesh devices reached Plaintiff's implanting surgeons and were implanted in Plaintiff without any substantial changes in the condition in which they was [*sic*] supplied, distributed, sold and/or otherwise placed into the stream of commerce.

**ANSWER:**    **To the extent the allegations contained within Paragraph 88 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it had any involvement with Surgimesh LOT# F14316A and lacks sufficient knowledge to admit or deny the remaining allegations contained within Paragraph 88 and therefore denies the same and demands strict proof thereof.**

89.    The Defendants failed to properly and adequately warn and instruct Plaintiff and her prescribing physicians that Surgimesh was designed and/or manufactured in a way that could cause injuries and damages including lasting and permanent injuries. Defendants further failed to inform and further warn Plaintiff and his prescribing physicians with respect to the most effective proper technique and methods of implantation and/or the selection of appropriate candidates to receive Surgimesh.

**ANSWER:**    **To the extent the allegations contained within Paragraph 89 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it specifically denies that it designed, labeled, provided instructions or warnings for, or trained physicians on Surgimesh. Further answering, Murray denies that it had any obligation to apprise the public and physicians of alleged "defects," and it denies the remaining allegations contained within Paragraph 89.**

90.    The Defendants failed to properly and adequately warn and instruct Plaintiff and his treating physician as to the risks and benefits of the Defendants' Surgimesh. To the contrary, Defendants withheld information from Plaintiff and his prescribing physicians regarding the true risks as relates to implantation of Surgimesh.

**ANSWER:**    **To the extent the allegations contained within Paragraph 90 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the implication that it had an obligation to disclose product risks and denies the remaining allegations contained within Paragraph 90.**

91.    The Defendants failed to properly and adequately warn and instruct Plaintiff and his treating physician that inadequate research and testing of the Surgimesh was done prior to Surgimesh being placed on the market and in the stream of commerce and that Defendants lacked a safe, effective procedure for removal of the Surgimesh once complications from same arise.

**ANSWER:** **To the extent the allegations contained within Paragraph 91 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the allegations contained within Paragraph 91.**

92. Defendants intentionally, recklessly, and maliciously misrepresented the efficacy, safety, risks, and benefits of Surgimesh, understating the risks and exaggerating the benefits in order to advance its own financial interest, with wanton and willful disregard for the rights, safety and health of Plaintiff.

**ANSWER:** **To the extent the allegations contained within Paragraph 92 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the implication that it had an obligation to disclose product risks and denies the remaining allegations contained within Paragraph 92.**

93. The dangerous and defective conditions in the Surgimesh devices implanted in Plaintiff existed at the time Defendants sold or transferred them. At the time Plaintiff had his implant surgery, the Surgimesh was in the same condition as when manufactured, distributed and sold.

**ANSWER:** **To the extent the allegations contained within Paragraph 93 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it lacks sufficient knowledge to admit or deny whether its Surgimesh was in the same condition as when co-defendants took custody of the product. Further answering, Murray denies that its Surgimesh was defective, denies that it had any involvement with LOT# F14316A, and denies the remaining allegations contained within Paragraph 93.**

94. Plaintiff did not know at the time of surgery that the Surgimesh placed during Plaintiff's surgery or at any time prior thereto, of the existence of the defects or dangerous propensities in the Surgimesh.

**ANSWER:** **To the extent the allegations contained within Paragraph 94 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that its Surgimesh was defective, that it had any obligation to apprise the public and physicians of alleged "defects," and denies the remaining allegations made within Paragraph 94.**

95.     Neither Plaintiff, nor his prescribing physicians would have used the Surgimesh XB product in Plaintiff has Defendants adequately disclosed the true associated with the device. Alternatively, Defendants would have used the devices differently in Plaintiff had the true risk and proper uses of the device been adequately disclosed.

**ANSWER:     To the extent the allegations contained within Paragraph 95 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies the implication that it had an obligation to disclose product risks and denies the remaining allegations contained within Paragraph 95.**

96.     The Surgimesh devices implanted in Plaintiff failed to perform as safely as an ordinary consumer and/or his physician would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer, and the risks and dangers of the Surgimesh outweigh its benefits.

**ANSWER:     Murray lacks sufficient knowledge to admit or deny whether the Surgimesh was used and implanted in Plaintiff in the manner in which they were intended to be used and implanted and therefore denies the same and demands strict proof thereof.  Further, Murray denies the remaining allegations contained within Paragraph 96, including the implication that it had any involvement with LOT# F14316A.**

110.     Defendants' conduct in continuing to market, sell and distribute the Surgimesh after obtaining knowledge that the products were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others, justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter Defendant and others from similar conduct in the future.

**ANSWER:     To the extent the allegations contained within Paragraph 110 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it marketed, publicly sold, or distributed Surgimesh, and denies the remaining allegations contained within Paragraph 110.**

111.     Defendants knew or should have known that its failure to exercise ordinary care in the manufacture, design, labeling, warnings, instructions, sale, marketing, distribution and recruitment and training of physicians to implant the Surgimesh would cause foreseeable harm, injuries and damages to individuals such as Plaintiff who are implanted with Surgimesh.

**ANSWER:** **To the extent the allegations contained within Paragraph 111 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it designed, labeled, provided warnings or instructions for, publicly sold, marketed, distributed, or recruited or trained physicians on Surgimesh. Further answering, Murray denies the remaining allegations contained within Paragraph 111.**

112. As a direct, proximate and foreseeable result of the Defendants' inadequate design, manufacture, labeling, marketing, sale, and distribution of the Surgimesh, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and consortium, and economic damages.

**ANSWER:** **To the extent the allegations contained within Paragraph 112 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it denies that it designed, labeled, publicly sold, marketed, or distributed Surgimesh. Further answering, Murray denies the remaining allegations contained within Paragraph 112.**

## VICARIOUS LIABILITY

113. Whenever in this complaint it is alleged that Defendants did or omitted to do any act, it is meant that Defendants' officers, agents, servants, employees, or representatives did or omitted to do such act and that at the time such act or omission was done, it was done with the full authorization or ratification of Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, and representatives.

**ANSWER:** **To the extent the allegations contained within Paragraph 113 are directed toward other Defendants, Murray states that no response is required.**

**As to Murray, it specifically denies the conduct of the other Defendants and their officers, agents, servants, employees and/or representatives is attributable to Murray. Murray denies the remaining allegations contained within Paragraph 113.**

## EQUITABLE TOLLING OF THE APPLICABLE STATUTE OF LIMITATION

114. The running of any statute of limitation has been tolled by reason of the Defendants' fraudulent conduct. Defendants, through affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's treating physicians the true risks associated with Surgimesh.

**ANSWER:**     **To the extent the allegations contained within Paragraph 114 are directed toward other Defendants, Murray states that no response is required.**

                     **As to Murray, it denies that it made such misrepresentations or omissions, and denies the remaining allegations contained within Paragraph 114.**

115.    As a result of the Defendants' actions, Plaintiff and Plaintiff's treating physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

**ANSWER:**     **To the extent the allegations contained within Paragraph 115 are directed toward other Defendants, Murray states that no response is required.**

                     **As to Murray, it denies the allegations contained within Paragraph 115.**

116.    Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their fraudulent concealment of the truth regarding the quality and nature of Surgimesh. Defendants had a duty to disclose the true character, quality and nature of Surgimesh because this was non-public information over which Defendants had and continued to have exclusive control, and because Defendants knew that this information was not available to the Plaintiff, medical providers and/or to health facilities. Defendants is estopped from relying on any statute of limitation because of their intentional concealment of these facts.

**ANSWER:**     **To the extent the allegations contained within Paragraph 116 are directed toward other Defendants, Murray states that no response is required.**

                     **As to Murray, it denies that it had an obligation to warn and denies the remaining allegations contained within Paragraph 116.**

117.    The Plaintiff had no knowledge that Defendants was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment and wrongdoing by Defendants, Plaintiff could not have reasonably discovered the wrongdoing until less than the applicable limitations period prior to the filing of this action.

**ANSWER:**     **To the extent the allegations contained within Paragraph 117 are directed toward other Defendants, Murray states that no response is required.**

                     **As to Murray, it denies the allegations contained within Paragraph 117.**

**PRAYER FOR RELIEF**

Plaintiff demands judgment against Defendants and prays for the following relief in accordance with applicable law and equity:

i. Compensatory damages to Plaintiff for past, present, and future damages, including, but not limited to, pain and suffering for severe and permanent personal injuries sustained by Plaintiff, permanent impairment, mental pain and suffering, loss of enjoyment of life, past and future health and medical care costs and economic damages including past and future lost earnings and/or earning capacity together with interest and costs as provided by law;
ii. Reasonable attorneys' fees as provided by law;
iii. The costs of these proceedings, including past a future cost of the suit incurred herein;
iv. Prejudgment interest on all damages as is allowed by law;
v. Such other and further relief as this Court deems just and proper.

**ANSWER:** **Murray denies that Plaintiff is entitled to any of the relief sought in his Prayer for Relief, specifically denies that Plaintiff is entitled to any relief as to Murray, and specifically denies that Plaintiff is entitled to any damages as to Murray.**

## MEDICAL MURRAY, INC.'S AFFIRRMATIVE DEFENSES
### TO PLAINTIFF'S COMPLAINT AT LAW

NOW COMES, Defendant, MEDICAL MURRAY, INC., by and through its attorneys, TUCKER ELLIS LLP, and pleading in the alternative and without prejudice to the denials and other statements contained within these pleadings, states for its Affirmative Defenses to Plaintiff's SAC as follows:

## FIRST AFFIRMATIVE DEFENSE
### (Contract Specification)

1.    Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020.  Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.    At all times relevant hereto, Murray cut and packaged Surgimesh products in accordance with contractual specifications, for which co-Defendant Chamberlain provided all specifications and requirements.

3.      Indiana law similarly provides a defense to contractors who perform actions in accordance with contract specifications provided to them. *See TRW Vehicle Safety Sys., Inc. v. Moore*, 936 N.E.2d 201, 215–16 (Ind. 2010); *Rogers v. Ford Motor Co.*, 925 F. Supp. 1413, 1420–21 (N.D. Ind. 1996); *Davis v. Henderlong Lumber Co.*, 221 F. Supp. 129, 134 (N.D. Ind. 1963); *see also* Restatement (Second) of Torts § 404, Comment a (1965); PROSSER, TORTS, § 104, at 681–82 (4th ed. 1971); 41 Am.Jur.2d Independent Contractors § 50 (1968).

4.      Thus, some or all of Plaintiff's claims are precluded under applicable law.

### SECOND AFFIRMATIVE DEFENSE
**(Preexisting, Superseding, or Intervening Causes)**

1.      Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020.  Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.      To the extent Plaintiff's alleged injuries resulted from preexisting, superseding, or intervening causes over which Murray had no control, Plaintiff's claims against Murray must be denied.

### THIRD AFFIRMATIVE DEFENSE
**(Comparative Fault)**

1.      Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020.  Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.     To the extent Plaintiff's injuries were caused, in whole or in part, by his own negligence, Plaintiff's claims against Murray must be denied, or in the alternative, Plaintiff's claimed damages must be reduced in accordance with his own comparative negligence.

### FOURTH AFFIRMATIVE DEFENSE
### (Product Misuse)

1.     Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020.  Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.     To the extent Plaintiff's injuries were caused by misuse or unforeseen or abnormal use of the product at issue, Plaintiff's claims against Murray must be denied.

### FIFTH AFFIRMATIVE DEFENSE
### (Substantial Change)

1.     Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020.  Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.     To the extent Plaintiff's injuries were caused by a substantial change to the product at issue after it left Murray's possession and control, Plaintiff's claims against Murray must be denied.

### SIXTH AFFIRMATIVE DEFENSE
### (Learned Intermediary)

1.     Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December

12, 2019 and on or about September 29, 2020. Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.      To the extent Plaintiff advances warnings-based claims against Murray under the Indiana Product Liability Act, such claims must be denied pursuant to the learned intermediary doctrine, as any duty to warn ran only to Plaintiff's physician and the 510(k) record holder provided Plaintiff's physician with adequate warnings. *See Ortho Pharm. Corp. v. Chapman*, 180 Ind. App. 33, 43 (1979).

**SEVENTH AFFIRMATIVE DEFENSE**
**(Informed Consent/Assumption of Risk)**

1.      Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020. Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.      Plaintiff's claims are barred on the grounds that Plaintiff knew, or in the exercise of ordinary care should have known, of the risk of the alleged injuries and expressly, freely, and voluntarily assumed said risk. In addition, and alternatively, Plaintiff had knowledge of the risk pertaining to the procedure(s) performed upon him and accepted and assumed said risk through informed consent.

**EIGHTH AFFIRMATIVE DEFENSE**
**(*Buckman* Defense)**

1.      Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020. Plaintiff's SAC is incorporated by reference as if set forth fully herein.

36

2.      Insofar as Plaintiff's claims are based on any Defendants' or their predecessors in interest's alleged misrepresentations or omissions made to FDA, such claims are barred by *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).

<u>**NINTH AFFIRMATIVE DEFENSE**</u>
**(Preemption / Inability to Change Labeling or Warnings)**

1.      Plaintiff filed his Complaint alleging certain injuries and damages as a result of being implanted with SurgimeshXB surgical mesh ("Surgimesh") devices on or about December 12, 2019 and on or about September 29, 2020.  Plaintiff's SAC is incorporated by reference as if set forth fully herein.

2.      To the extent Plaintiff advances warnings-based claims against Murray under the Indiana Product Liability Act, such state law warnings-based claims are barred on the grounds that Murray is not and has never been the 510(k) record holder for Surgimesh and had no power to conduct post-market surveillance.  Accordingly, federal law does not allow Murray to change the Surgimesh labeling or warnings through the applicable regulatory processes, and because Murray could not independently change the Surgimesh labeling or warnings as Plaintiff alleges state law required, Plaintiff's warnings-based claims are preempted and should be dismissed.

Dated: November 11, 2025

**MEDICAL MURRAY, INC.**

/s/ *Connor J. Doughty*

Sherry A. Knutson (#6276306)
Andrea Glinka-Przybysz (#6302787)
Connor J. Doughty (#6338911)
Tucker Ellis LLP
233 S. Wacker Drive
Suite 6950
Chicago, IL  60606
T:  (312) 624-6322
F:  (312) 624-6309
sherry.knutson@tuckerellis.com
andrea.przybysz@tuckerellis.com

connor.doughty@tuckerellis.com

*Attorneys for Defendant, Medical Murray, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 11, 2025, they served a copy of the foregoing

on all counsel of record via electronic case filing procedures.

| | |
|---|---|
| Alan J. Bernstein | Elizabeth Erin Babbitt |
| Law Offices of Alan J. Bernstein, Ltd. | Paul John Coogan |
| 10 S. LaSalle St. | Thomas Hudson Cross, IV |
| Suite 1420 | Taft Stettinius & Hollister LLP |
| Chicago, IL 60603 | 111 E. Wacker Drive |
| bernlaw2@gmail.com | Suite 2800 |
| T: (312) 726-2755 | Chicago, IL 0601 |
| F: (312) 726-2959 | ebabbitt@taftlaw.com |
| | pcoogan@taftlaw.com |
| Jill M. Santiago (*Pro Hac Vice*) | hcross@taftlaw.com |
| Troy A. Brenes, SBN (*Pro Hac Vice*) | T: (312) 527-4000 |
| Brenes Law Group, P.C. | |
| 100 Spectrum Center Drive | Ryan C. Edwards |
| Suite 330 | Taft Stettinius & Hollister LLP – Cincinnati |
| Irvine, CA 92618 | 1800 Firstar Tower |
| jsantiago@breneslawgroup.com | 425 Walnut Street |
| tbrenes@breneslawgroup.com | Cincinnati, OH 45202 |
| T: (949) 397-9360 | edwardsr@taftlaw.com |
| F: (949) 607-4192 | T: (513) 381-2838 |

*Attorneys for Plaintiff*                              *Attorneys for Defendants, BG Medical, LLC and Chamberlain Technologies LLC*

*/s/ Connor J. Doughty*

*One of the Attorneys for Defendant Medical Murray, Inc.*